**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone:     (818) 991-8080
Facsimile:      (818) 991-8081
ssaltzman@marlinsaltzman.com

**LAW OFFICE OF W. HANSULT**
William Hansult, Esq. (SBN 200915)
1399 Ramona Avenue, # C
Grover Beach, California 93433
Telephone:     (805) 489-1448
hansultlaw@aol.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE KRAUSE-PETTAI, SCOTT GRIMM, STEVE TABU LANIER, CHRISTY STEVENS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>UNILEVER UNITED STATES, INC., a corporation; and DOES 1-10, inclusive,<br><br>        Defendants. | CASE NO.   **'20 CV1672 BEN BLM**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. Violation of California Consumers Legal Remedies Act (CLRA)<br>2. Violation of California False Advertising Law (FAL)<br>3. Violation of California Unfair Competition Law (UCL)<br>4. Unjust Enrichment<br>5. Breach of Implied Warranty<br>6. Negligent Misrepresentation Civ. C.§§ 1709, 1710, 1711 & 1714<br>7. Fraud and Deceit<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs NICOLE KRAUSE-PETTAI, SCOTT GRIMM, STEVE TABU LANIER, and CHRISTY STEVENS ("Plaintiffs"), by and through their undersigned counsel, bring this action, on behalf of themselves in their individual capacity and a class of all other similarly situated consumers, against Defendants UNILEVER UNITED STATES, INC. and DOES 1-10, inclusive ("Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated.  The class that Plaintiffs seek to represent is composed of all consumers in California during the relevant times set forth in this Complaint who purchased any solid stick style antiperspirant and/or deodorant product, whether marketed for men or women, and purchased from any source, whether retail, wholesale, mail order, Internet etc., under the brand names of Degree, Dove and Axe (the "Products") and placed into the stream of commerce by Defendant Unilever United States, Inc. ("Defendant" or "Unilever").

2.      It is hereby alleged that the packaging containing the antiperspirant and/or deodorant was fraudulent and misleading because the packaging had a significant amount (approximately 40%) of "nonfunctional slack fill." This slack fill was not perceptible to the consumer due to the opaque coloring of the packaging and because of the almost imperceptible labeling of the weight of the deodorant, each and/or both of which purposefully mislead consumers into believing they were getting much more volume of deodorant than the size of the package portrayed.

3.      This misleading packaging was an inducement for consumers to buy these Products as compared to competitor's products, and in fact, consumers relied upon the size of the packaging as a gauge to how much product they were receiving.  The misleading packaging did induce Plaintiffs and the putative class members to purchase the Products because they believed they were getting more product than was actually in the package.

4.      Defendant knew they were misleading consumers in this way and did it purposefully to mislead in order to gain a larger market share for the Products.

5.      The general definition of non-functional slack fill is when a container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill.  Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.  Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity.

6.      "Slack filling . . . is an unlawful trade practice.  For a seller to package goods in

**Class Action Complaint**

containers which unknown to the consumer are appreciably oversized, or in containers so shaped as to create the optical illusion of being larger than conventionally shaped containers of equal or greater capacity, is as much a deceptive practice, and an unfair method of competition, as if the seller was to make an explicit false statement of the quantity or dimension of his goods. . . ." (*Hobby Industry Assc. v. Younger* (1980) 101 CA3d 358, 367 citing, *Papercraft Corp.* (1963) 63 F.T.C. 1965, 1992; *Burry Biscuit Corp.* (1941) 33 F.T.C. 89; and *Marlborough Laboratories Inc.* (1941) 32 F.T.C. 1014.)

7.    Plaintiffs bring this action, on behalf of themselves and all others similarly situated, allege violations of the FAL (*Cal. Bus. & Prof. Code* § 17500, et seq.) for injunctive relief to restore to any person in interest any money which was acquired in violation of FAL; violations of the UCL (*Cal. Bus. & Prof. Code* § 17200 et seq.) for disgorgement of profits restitution and injunctive relief to enjoin defendants from engaging in this unlawful marketing scheme; violations of the CLRA (*California Civil Code* § 1750, et seq.) for actual damages and punitive damages; Unjust Enrichment for restitution and/or disgorgement of profits;  Breach of Implied Warranty for damages; Negligent Misrepresentation (*California Civil Code* §§ 1709, 1710, 1711 & 1714)  for damages; and Fraud & Deceit (*California Civil Code* §§ 1709, 1710, 1711 & 1714) for damages and punitive damages.

## JURISDICTION

8.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2) & (6), as the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs; as the action involves 100 or more class members; and at least one member of the Plaintiff class is a citizen of a State different from at least one Defendant.

9.    This Court has personal jurisdiction over Unilever United States, Inc., because it purposefully availed itself of the privilege of conducting business activities within this District by placing in the stream of commerce the Products for sale within the State of California, and it has generally maintained systematic and continuous business contacts with California.

10.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c) as many of the acts complained of herein occurred in this District and gave rise to the claims alleged and

Unilever United States, Inc. conducts business in this District. In addition, at least two of the individual and Class Representative Plaintiffs reside within this District and purchased products while residing in this District.

## PARTIES

*Plaintiffs*

11.     Plaintiff Nicole Krause-Pettai is an individual consumer and a resident of San Diego County, California.  On multiple times during the class period, Nicole Krause-Pettai purchased, for her personal use, Dove "Go Fresh" stick antiperspirant & deodorant from various retailers in San Diego County.  Although she could not see how much product was contained in the package because the package was opaque, she always chose the Dove brand of stick deodorant because from the larger size of the Dove package it appeared that she was getting more product for a similar price as compared to other brands of stick deodorant which were in smaller packages she saw displayed in stores.  As a result of seeing the larger package, she thought she was getting a better deal with the Dove product versus other brands.  The illusion of a better deal induced her purchases of the Defendants' product.  Nicole Krause-Pettai's most recent purchase of Dove "Go Fresh" stick antiperspirant & deodorant was made in late September 2017 from the retailer Walmart in San Diego for the price of  approximately $5.00 for a single unit.

12.     Plaintiff Scott Grimm is an individual consumer and a resident of Orange County, California.  A few times during the class period, Scott Grimm purchased, for his personal use, Men Degree Motion Sense "Everest" and "Sport Defense" stick antiperspirant & deodorant from various retailers in Orange County.  Although he could not see how much product was contained in the package because the package was opaque, he always chose the Degree brand of stick antiperspirant because from the larger size of the Degree package it appeared that he was getting more product for a similar price as compared to other brands of stick antiperspirant which were in smaller packages he saw displayed in stores.  As a result of seeing the larger package, he thought he was getting a better deal with the Degree product versus other brands.  The illusion of a better deal induced his purchases of the Defendants' product.  Scott Grimm's most recent purchase of Men Degree stick antiperspirant was a 5-pack from the retailer Costco in Laguna

**Class Action Complaint**

Niguel for the price of approximately $14.00 and purchased in late August 2017.

13.    Plaintiff Steve Tabu Lanier is an individual consumer and a resident of San Diego County, California.  Several times during the class period, Steve Tabu Lanier purchased, for his personal use, Axe Antiperspirant Stick for Men, "Dark Temptation" from various retailers in San Diego County.  Although he could not see how much product was contained in the package because the package was opaque, he always chose the Axe brand of stick antiperspirant because from the larger size of the Axe package it appeared that he was getting more product for a similar price as compared to other brands of stick antiperspirant which were in smaller packages he saw displayed in stores.  As a result of seeing the larger package, he thought he was getting a better deal with the Axe product versus other brands.  The illusion of a better deal induced his purchases of the Defendants' product.  Steve Tabu Lanier's most recent purchase of Axe Antiperspirant Stick for Men, "Dark Temptation" was made in mid-June 2017 from the retailer Walmart in San Diego for the price of about $4.00 for a single unit.

14.    Plaintiff Christy Stevens is an individual consumer and a resident of Sacramento County, California.  During the class period, on several occasions Christy Stevens purchased, for her personal use, Degree Women Antiperspirant Deodorant Stick "Shower Clean" from various retailers in Sacramento County.  Although she could not see how much product was contained in the package because the package was opaque, she always chose the Degree brand of stick antiperspirant because from the larger size of the Degree package it appeared that she was getting more product for a similar price as compared to other brands of stick antiperspirant which were in smaller packages she saw displayed in stores.  As a result of seeing the larger package, she thought she was getting a better deal with the Degree product versus other brands.  The illusion of a better deal induced her purchases of the Defendants' product.  Christy Stevens' most recent purchase of Degree Women Antiperspirant Deodorant Stick "Shower Clean" was made in late July 2017 from the retailer Walgreens in Sacramento for the price of about $5.00 for a single unit.

**Defendants**

15.    Plaintiffs are informed and believe, and based thereon alleges, that Defendant Unilever United States, Inc. is part of an international company, the Unilever Group, which

consists of two parent companies, Unilever NV and Unilever PLC, together with their group companies, and operate as a single economic entity. NV and PLC and their group companies constitute a single reporting entity for the purposes of presenting consolidated accounts. Accordingly, the accounts of the Unilever Group are presented by both NV and PLC as their respective consolidated accounts.

16.     Unilever NV is a public limited company registered in the Netherlands, which has listings of shares and depositary receipts for shares on Euronext Amsterdam and of New York Registry Shares on the New York Stock Exchange.

17.     Unilever PLC is a public limited company registered in England and Wales which has shares listed on the London Stock Exchange and, as American Depositary Receipts, on the New York Stock Exchange.

18.     The Unilever Group has company headquarters in Rotterdam, Netherlands, London, England and the United States.  The portion of the Unilever Group in the United States is called Unilever United States, Inc., It is a corporation headquartered and located at 800 Sylvan Avenue, Englewood Cliffs, NJ 07632, incorporated within the State of Delaware with entity number 0842944, and registered with the New Jersey Secretary of State with entity number 0100400419.

19.     In the United States, Unilever places its products into the stream of commerce to be sold directly to consumers by various marketing channels including retail stores, big box stores (e.g. Costco), drug stores, Internet (e.g. Amazon), etc., in all fifty States.

20.     In the financial year ended 31 December 2013, Unilever had worldwide sales of €49.797 billion (approximately $68 billion) of which 36% was from Personal Care products. Unilever owns over 400 brands and its products are available in 190 countries.

21.     In April 2011, Unilever was fined €104 million (approximately $150 million) by the European Commission for establishing a price-fixing cartel in Europe.

22.     The true names and capacities, whether individual, corporate, associate or otherwise of Defendant DOES 1 through 10, inclusive, are unknown to Plaintiffs at this time. Plaintiffs will amend this Complaint to show their true names and capacities once they are

**Class Action Complaint**

ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of said fictitious defendants are responsible in some manner for the acts and occurrences set forth herein, and that the injuries and damages alleged herein were and are the direct and proximate result of the actions of these defendants. Plaintiffs make all allegations contained in this Complaint against Defendants, and each of them, including DOES 1 through 10, inclusive

23.     The use of the term "Defendant" or "Defendants" in any of the allegations in this Complaint, unless specifically alleged otherwise, is intended to include and charge, both jointly and severally, not only the Defendants identified in this Complaint, but also all Defendants designated as DOES 1 through 10, inclusive, as though the term "Defendants" was followed in each and every instance throughout this Complaint with the phrase "and each of them jointly and severally," including all named Defendants and Defendants included herein and sued under the fictitious names of DOES 1 through 10, inclusive.

24.     Plaintiffs are informed and believe, and based thereon allege, that Defendants, at all times herein mentioned, were the partners, joint venturers, subsidiaries, successors in interest, managing agent, merged entities, agents, alter egos, part of a jointly owned, managed, and/or operated business enterprise, and/or employees of each other Defendant and in doing the acts, omissions, and things alleged herein were acting as such and within the scope of their authority as such agents and employees and with the permission and consent of all other Defendants. Plaintiffs are informed and believe, and based thereon allege, that Defendants have, and at all times herein mentioned had, a joint economic and business interest, goal and purpose in the Unilever line of products that are the subject of this lawsuit.

## FACTUAL ALLEGATIONS

25.     Unilever is an International Company, with its United States Division headquartered and incorporated in the State of New Jersey.  Unilever is organized into four main divisions: Personal Care; Foods; Refreshments; and Home Care.  The Products subject to this Complaint are within the division of Personal Care. The Products subject to this Complaint are defined as any stick style antiperspirant and/or deodorant product, whether marketed for men or women, under the brand names of Degree, Dove and/or Axe and placed into the stream of

commerce by Defendant to be sold directly to consumers by various marketing channels including retail stores, big box stores (e.g. Costco), drug stores, Internet (e.g. Amazon), etc. in all and each of the fifty states of the United States.

26.     Representative Plaintiff Grimm has purchased Defendant's Products from different sources (Costco, drug stores etc.) for a couple of years.  The specific product purchased by Plaintiff was the stick antiperspirant & deodorant "Degree" for men.  At the time of his purchases, although he could not see how much product was contained in the package due to the opaque color of the package, Plaintiff Grimm always believed that the size of the packaging of Defendant's product was full of the deodorant and thus represented the quantity or volume of the product he was purchasing.  Because of the opaque coloring of the packaging containing the deodorant, Plaintiff was never aware at the time of purchase that there was empty space at the bottom of the package known as nonfunctional slack-fill.  Plaintiff's most recent purchase of Defendant's product was made at Costco in March 2017.

27.     When shopping for stick antiperspirant, Plaintiff Grimm noticed that the competitors' stick antiperspirant, of similar pricing, were in smaller packages, with the same twist bottom delivery system.  The competitors' packaging was not opaque and thus he was able to see that the package was completely full of product.  Because of the larger packaging with the Degree product, Plaintiff Grimm concluded that he was getting more product for a similar price as compared to the competitors' products, and it was this larger packaging, which induced him to purchase the Degree product versus the competitors.

28.     Then, later in 2017 Plaintiff Grimm removed from his cabinet a new and unopened stick deodorant of Degree for Men (Everest), and when he did this, it was late afternoon and the sun was shining through the window while he removed the top and the sun was shining on the packaging of the product.  It was at this time, Plaintiff noticed something he never noticed before, which was at the bottom of the packaging an odd and off color.  That being odd, and since the new package felt top heavy, he started to examine the package more closely, which resulted in Plaintiff Grimm shining intense light onto the product in order to attempt to see through the mostly opaque off white coloring.

29.     What Plaintiff Grimm discovered was that from the bottom of the packaging (which started above the twisting device), until he reached the plunger (which was required to push the deodorant up through the packaging for delivery), there was a significant amount of empty space.  This empty space was not present in the competitors packaging when he looked at them in the store.  Plaintiff then examined the top cover and found that there was some nonfunctional empty space at the top of the packaging too.  Plaintiff then measured the packaging (not including the twisting device at the bottom required for functionality), which should only be representative of what contained the product, and that measured at 5 inches.  Then he measured the amount of product (deodorant) filled within the package (including the plunger which is required for functionality) and that measured 3 inches.  Thus, the nonfunctional slack-fill represented about 40% of the size of the packaging.  He then concluded that there was no practical reason for the empty space other than for deceptive marketing practices.

30.     Plaintiff Grimm, now being curious, followed up on his finding and examined another, but different, new Degree deodorant package (Sport Defense).  The black opaque coloring of this package made it impossible to be able to see the contents on the inside no matter how much light was shown upon it, so he decided to cut it open and found the same empty space at the bottom.  The other thing he noticed about the labeling on the Degree product was that it was very difficult for him to find the net weight of the product.  On one product (Everest) the print was extremely small and on a different Degree product (Sport Defense) the net weight was incorporated as part of the graphic design of the label making finding the information very difficult.

31.     Continuing his curiosity, Plaintiff Grimm decided to go to a local drug store and more closely compare competitors' products.  First, Plaintiff noticed in the competitors' products that the net weight labeling, although small, was in a larger font size than Defendants and much more easily readable and easily found on the label.  Next Plaintiff noticed that the average size of the competitor's packaging (just the portion containing the deodorant) was smaller; in that Defendant's package was 5 inches while the competitors were 3 ½ to 4 inches.  The next thing Plaintiff noticed was that in these smaller packages of the competitors, the weight of the product

**Class Action Complaint**

was 2.7 oz., (for the 3 ½ inch size package) to 3 oz., (for the 4 inch size package), whereas Defendant's was 2.7 oz. (in the 5 inch size package). Lastly, Plaintiff picked up packaging of two competitors (Gillette and Right Guard), both with the same delivery mechanisms as in Defendant's packaging, and both of these packages were clear, allowing him to easily see how much product was in the packaging and there was no slack-fill at the bottoms of the packages demonstrating to him there was no functional reason to have empty space at the bottom of the Defendant's packaging and he felt Defendant's packaging deceived him into thinking he was getting more product than he was, as compared the Defendant's competitors, and thus induced him into buying Defendant's products instead of the competitors.

32.     Representative Plaintiffs Krause-Pettai, Tabu Lanier, and Stevens have purchased Defendant's Products from different retail sources for a couple of years. The specific products purchased by Plaintiffs were the stick antiperspirant & deodorant "Dove" "Degree" and "Axe." At the time of their purchases, although they could not see how much product was contained in the package due to the opaque color of the package, Plaintiffs Krause-Pettai, Tabu Lanier, and Stevens believed that the size of the packaging of Defendant's product was full of the deodorant and thus represented the quantity or volume of the product they were purchasing. Because of the opaque coloring of the packaging containing the antiperspirant & deodorant, Plaintiffs were never aware at the time of purchase that there was empty space at the bottom of the package known as nonfunctional slack-fill. Plaintiffs' most recent purchases of Defendant's product were made 2017.

33.     When shopping for stick antiperspirant & deodorant, Plaintiffs Krause-Pettai, Tabu Lanier, and Stevens noticed that the competitors' stick antiperspirant, of similar pricing, were in smaller packages, with the same twist bottom delivery system, and that the packaging was not opaque, allowing them to see that the product filled the entire container. Because of the larger packaging with the Dove, Degree and Axe products, Plaintiffs concluded that they were getting more product for a similar price as compared to the competitors' products, and it was this larger packaging, which induced them to purchase the Defendant's products versus the competitors.

34.     After some time of use, Plaintiffs Krause-Pettai, Tabu Lanier, and Stevens all noticed that even when the Defendant's product was brand new and supposedly filled to capacity, that the products were top-heavy and easily toppled over when placed upon the bathroom counter in a similar manner as when the products were almost depleted.  As a result, they all concluded this could only be the result of there being empty space at the bottom of the packages.  Thereafter, Plaintiffs made note of the net weight of the product (which they eventually found in small print) and compared this net weight, to the net weight of the competitors' products in the smaller packaging with the same delivery system, and found that the net weight was the same.  Plaintiffs then concluded that Defendant's packaging deceived them into thinking they were getting more product than they were.

35.     All of the Defendants' Products (being stick antiperspirant & deodorant under the brand names of Degree, Dove and Axe, under all sub-brand names for both men and women) contain significant hidden nonfunctional slack fill and are deceptively labeled.

36.     Because there is no functional reason for the empty space at the bottom of Defendant's product packaging and that they knowingly hid this empty space from the consumer utilizing opaque packaging, Defendant was well aware that they were putting these products into the stream of commerce with illegal slack fill.

37.     Given that Defendant's filing with the United States SEC stated that they acknowledged they were subject to all of the laws of the United States and of the individual States in which they marketed all of their products, Defendants were well aware that such packaging, for the "products" subject to the Complaint was fraudulent, a deceptive business practice and false advertising.

38.     Defendant knew and were well aware that if they marketed their "products" in a package much larger than necessary for functionality, that the consumer would think at the time of purchase they were getting more volume of deodorant than they really purchased, and thus not only deceiving the consumer, but also getting a market edge on their competitors.

39.     By Defendant knowingly and purposefully obscuring from the consumer just how much deodorant they were purchasing by providing non-functional slack fill in their opaque

**Class Action Complaint**

packaging and by obscuring the label listing the weight of the product, Defendant was knowingly and purposefully misleading and defrauding consumers into thinking they were purchasing more volume of deodorant than was actually the truth, and Plaintiffs and the putative class of consumers relied upon these misleading, fraudulent representations as an inducement to purchase Defendant's products.

40.     Because of the deceptions used by Defendant, (slack fill, opaque packaging and blurred labeling), Plaintiffs and all other consumers were deceived into making the purchases they did, and they relied upon the Defendant's deceptive packaging to make their choices as to what product to purchase.

41.     Both State of California law and Federal law have declared this type of advertising, for non-food products, described in this Complaint, which Defendant has engaged in concerning the marketing of its "products," as false advertising, a fraudulent business practice, misleading and deceptive to consumers.

42.     First, *California Business and Professions Code* § 12606 states in pertinent part, ", (a) No container wherein commodities are packed shall have a false bottom, false sidewalls, false lid or covering, or be otherwise so constructed or filled, wholly or partially, as to facilitate the perpetration of deception or fraud.  (b) No container shall be made, formed, or filled as to be misleading. A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill. Slack fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity.[1]" *California Health & Safety Code* §110375 states the same thing as *Business and Professions Code* § 12606, for among other things for all "foods, drugs, devices, or cosmetics." Furthermore, *California Health & Safety Code* § 110290 & 110295 specifically provide that the weight of the product must be legible on a label.

---

[1]     This code then goes on to list several exceptions which if proven by a defendant could then declassify the slack fill from nonfunctional to functional.  However, under the facts contained herein this Complaint, Defendants do not qualify for any of the exceptions.

43.     And second, Federal law also states this is a fraudulent practice for marketing non-food products at 15 USC 1454.  First, section (a) provides the scope, which includes Defendants' "products" herein and states, "(a) The authority to promulgate regulations under this chapter is vested in (A) the Secretary of Health and Human Services (referred to hereinafter as the "Secretary") with respect to any consumer commodity which is a food, drug, device, or cosmetic, as each such term is defined by section 321 of title 21; and (B) the Federal Trade Commission (referred to hereinafter as the "Commission") with respect to any other consumer commodity.  Next, section (c)(4), specifically forbids slack fill and this section  states, "prevent the nonfunctional-slack-fill of packages containing consumer commodities.  For purposes of paragraph (4) of this subsection, a package shall be deemed to be nonfunctionally slack-filled if it is filled to substantially less than its capacity for reasons other than (A) protection of the contents of such package or (B) the requirements of machines used for enclosing the contents in such package."  In addition, 15 USC 1453 proscribes that the weight of the product shown on the label be conspicuous and legible, with a sufficient size type font.

44.     Under California law, nonfunctional slack fill is a deceptive business practice under the UCL and considered false advertising under the FAL and the CLRA.  *Hobby Industry Assc. v. Younger* (1980) 101 CA3d 358.

45.     "Slack filling . . . is an unlawful trade practice.  For a seller to package goods in containers which unknown to the consumer are appreciably oversized, or in containers so shaped as to create the optical illusion of being larger than conventionally shaped containers of equal or greater capacity, is as much a deceptive practice, and an unfair method of competition, as if the seller was to make an explicit false statement of the quantity or dimension of his goods. . . ." (*Hobby Industry Assc. v. Younger* (1980) 101 CA3d 358, 367 citing, *Papercraft Corp.* (1963) 63 F.T.C. 1965, 1992; *Burry Biscuit Corp.* (1941) 33 F.T.C. 89; and *Marlborough Laboratories Inc.* (1941) 32 F.T.C. 1014.)

## CLASS ACTION ALLEGATIONS

46.     Plaintiffs bring this lawsuit, both individually and on behalf of similarly situated purchasers of the Products, pursuant to Rule 23.  Subject to additional information obtained

through further investigation and/or discovery, the foregoing definition of the Classes may be expanded or narrowed. The proposed Classe is defined as follows:

> All individual consumer residents of California who purchased Defendants' "products" (whereas "products" is defined within paragraph 30 of this Complaint) within the applicable statutory limitations period, including the period following the filing of the date of this action.

Specifically excluded from this Class is Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant. Also excluded are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his or her immediate family and judicial staff, and any juror assigned to this action.

47.     Plaintiffs propose that this case should be maintained as a class action under Fed. R.Civ.P. 23 because it meets the requirements of Fed. R.Civ.P. 23(a) and also satisfies Fed. R.Civ.P. 23(b)(3).  Plaintiffs also believe this case could be certified under Fed. R.Civ.P. 23(b)(1), 23(b)(2), and 23(c)(4). Without prejudice to raising alternative arguments for certification under either Fed. R.Civ.P. 23(b)(1), 23(b)(2) and 23(c)(4), the following facts, amongst others, demonstrate that this case is entitled to be maintained under Fed. R.Civ.P. 23(a) and 23(b)(3).

48.     **Numerosity**: The members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The total membership of the Class is unknown to Plaintiffs at this time; however, it is estimated that the there are more than one thousand (1,000) individuals in the Class. The identity of such membership is readily ascertainable via inspection of Defendants' books and records or other approved methods. Similarly, Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

49.     **Commonality**: Common questions of law and fact exist as to all members of the Class.  These common questions predominate over any questions affecting only individual Class Members.  These common legal and factual questions include, but are not limited to:

a)     Whether Defendants included non-functional slack fill within their product packaging;

b)       Whether Defendants' labeling made it difficult for consumers to determine the net weight of the product;

c)       Whether Defendants' practices are deceptive or likely to deceive reasonable consumers;

d)       Whether Defendants' conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

e)       Whether Defendants' acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution, and sale of the Products violated the laws alleged herein;

f)        Whether Plaintiffs and Class are entitled to injunctive and other equitable relief;

g)       Whether Defendants were unjustly enriched by their conduct; and

h)       Whether Plaintiffs and the Class have sustained monetary loss and the proper measure of that loss.

50.   **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Class because, amongst other things, Plaintiffs and all Class members were comparably injured through Defendants' misconduct at issue herein.  As alleged herein, Plaintiffs, like the members of the Class, purchased Products with non-functional slack fill.  Plaintiffs' claims are thereby representative of and co-extensive with the claims of the Class.

51.   **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have no interests that are antagonistic to or in conflict with the interests of other putative Class members and are subject to no unique defenses. Plaintiffs are similarly situated in interest to all members of the putative Class and are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in complex class action litigation.  Moreover, putative Class Counsel are experienced consumer class action litigators who have brought and successfully resolved and/or tried numerous consumer class actions on behalf of California and nation-wide classes in state and federal courts.

52.   **Predominance of Common Questions**: Defendants have acted, and/or refused to

act, on grounds generally applicable to the Class.  The common questions of law set forth above are numerous and substantial and stem from Defendants' practices applicable to each individual Class Member.   As such, these common questions predominate over individual questions concerning each individual Class member.

53.   **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all members is impracticable. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' deceptive conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for those parties and the judicial system.

54.   Injunctive Relief Appropriate: Injunctive relief under Rule 23(b) is necessary and appropriate to require Defendants to: (a) discontinue the practice of including non-functional slack fill and or obscure product weight labeling; (b) undertake an immediate public information campaign to inform members of the putative Classes as to their prior practices; and (c) to correct any erroneous impression consumers may have derived concerning the amount of product they were purchasing, including without limitation, the placement of corrective advertising and providing written notice to the public.

### FIRST CAUSE OF ACTION

**Violation of the Consumers Legal Remedies Act**

**[Cal. Civ. Code §§ 1750, et seq.]**

55.   Plaintiffs hereby incorporate all preceding and succeeding paragraphs as though fully set forth herein.

56.   The Consumers Legal Remedies Act, Civil Code §§ 1750, et seq., was designed and enacted to protect consumers from unfair and deceptive business practices.  To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code § 1770.

57.   Plaintiffs have standing to pursue these claims because they have suffered injury

**Class Action Complaint**

in fact and a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiffs would not have purchased the products or paid as much for it, if they had known the truth.

58.     Plaintiffs suffered injury in fact and a loss of money and property with each purchase because they were deceived into purchasing Defendant's products as described in the "Parties" paragraphs numbered 14 through 17 and the "Factual Allegation" paragraphs numbered 30 through 50.

59.     Plaintiffs suffered injury in fact and a loss of money and property with each purchase because they lost the opportunity to purchase and consume products that were not tied to false and deceptive practices of Defendant as described in the "Parties" paragraphs numbered 14 through 17 and the "Factual Allegation" paragraphs numbered 30 through 50.

60.     Plaintiff and the members of the Class are "consumers" as that term is defined by Cal. Civil Code § 1761(d).

61.     The Products marketed and sold by Defendant are "Goods" as that term is defined by Cal. Civil Code § 1761(a).

62.     Defendant is a "person" as that term is defined by Cal. Civil Code § 1761(c).

63.     The transactions described herein are "transactions" as that term is defined by Cal. Civil Code § 1761(e).

64.     The policies, acts, and practices described in this Complaint were intended to induce consumers to purchase the Products.

65.     Defendant made representations and material omissions regarding the nature of their products that they knew, or should have known, were deceptive and likely to cause consumers to buy their products in reliance upon said representations.

66.     Defendant had a duty not to mislead consumers about the amount of product they were purchasing via deceptive methods as nonfunctional slack fill and obscure labeling.

67.     Defendant's misrepresentation regarding their product packaging was material, in that a reasonable person would have considered it important in deciding whether or not to purchase the Products.

**Class Action Complaint**

68.     Defendant's concealment, omissions, misrepresentations, and deceptive practices, in violation of the CLRA, were designed to induce Plaintiffs and Class Members to purchase the Products and to conceal the true value of the Products.

69.     The business acts and practices of Defendant are unlawful, unfair and deceptive within the meaning of the CLRA, because, Defendant's actions as described in the "Parties" paragraphs numbered 14 through 17 and the "Factual Allegation" paragraphs numbered 30 through 50 violated *California Civil Code* § 1770 (a)(4) & (5), which states, "(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:… (4) Using deceptive representations … in connection with goods or services…. (5) Representing that goods or services have… quantities which they do not have."

70.     Defendant's acts and practices, undertaken in transactions intended to result and which did result in the purchase of their Products by consumers, violate Civil Code § 1770 and caused harm to Plaintiffs and Class Members who would not have purchased (or paid as much for) the products had they known the truth about the nonfunctional slack fill.

71.     To this day, Defendant continues to engage in this conduct of using nonfunctional slack fill in its products and expand its use.

72.     In accordance with Civil Code § 1780(a), Plaintiffs and the Class and California Subclass seek injunctive and equitable relief for violations of the CLRA, including restitution and disgorgement.

73.     Venue is proper pursuant to Civil Code § 1780(c) because Defendant does business in the county where this action was originally filed.

74.     On August 26, 2020, Plaintiffs mailed Defendant notice of its violations of Cal. Civil Code § 1770 in accordance with Cal. Civil Code § 1782. If Defendant fails to make the demanded corrections within thirty (30) days of receipt of Plaintiffs' notice, Plaintiffs will seek leave to amend the Complaint to claim damages under the CLRA

75.     Plaintiffs and the Class further request actual damages and punitive damages, pursuant to Civil Code § 1780(a); costs and attorneys' fees pursuant to Civil Code § 1780(e) and

1  Civil Code § 1021.5; and such other relief as the Court deems necessary and proper.

2  ## SECOND CAUSE OF ACTION

3  **False and Misleading Advertising**

4  **[Bus. & Prof. Code §§ 17500 et seq.]**

5  76.    Plaintiffs hereby incorporate all preceding and succeeding paragraphs as though
6  fully set forth herein.

7  77.    By committing the acts alleged in this Complaint, Defendants have violated Bus.
8  & Prof. Code § 17500, et seq. (FAL)  Plaintiffs have standing to pursue these claims because,
9  inter alia, they have suffered injury in fact and a loss of money and/or property as a result of the
10  wrongful conduct alleged herein.  Plaintiffs would not have purchased the products or paid as
11  much for them if they had known the truth. Plaintiffs did not receive the value they expected for
12  the price they paid because, due to the nonfunctional slack fill and obscure labeling, they were
13  deceived into believing they were getting more product than they actually received.

14  78.    As a direct and proximate result of Defendant's conduct, as described in the
15  "Parties" paragraphs numbered 14 through 17 and the "Factual Allegation" paragraphs numbered
16  30 through 50, Plaintiffs have suffered injury in fact.

17  79.    Pursuant to Bus. & Prof. Code § 17535, Plaintiffs and the Class seek an order of
18  the Court enjoining Defendants from continuing to make and disseminate illegal, misleading
19  and/or untrue statements in their pricing practices and to order Defendants to disclose such
20  misrepresentations and inform the public accordingly. Plaintiffs, the Class and the public will be
21  irreparably harmed if such an order is not granted.

22  80.    Pursuant to Bus. & Prof. Code §§ 17203 and 17535 Plaintiffs and the Class seek
23  restitution and/or disgorgement under Bus. & Prof. Code § 17500, et seq. necessary to restore to
24  any person in interest any money or property, real or personal, which may have been acquired by
25  means of any practice under Bus. & Prof. Code § 17500 declared to be unlawful.

26  81.    Plaintiffs and the Class also seek an order requiring Defendants to pay attorneys'
27  fees pursuant to Civ. Code § 1021.5.

28  / / /

### THIRD CAUSE OF ACTION

**Violation of the California Unfair Competition Law**

**[Bus. & Prof. Code §§ 17200 et seq.]**

82.     Plaintiffs hereby incorporate all preceding and succeeding paragraphs as though fully set forth herein.

83.     California Bus. & Prof. Code §§ 17200, et seq. (UCL) prohibits acts of unfair competition, which include any "unlawful, unfair or fraudulent business practice." The conduct escribed herein is ongoing and constitutes unfair, unlawful, fraudulent business acts and practices within the meaning of Bus. & Prof. Code §§ 17200, et seq.

84.     Plaintiffs have standing to pursue these claims because, inter alia, they have suffered injury in fact and a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiffs would not have purchased the product(s) and/or paid as much for them if they had known the truth. Plaintiffs did not receive the value they expected for the price they paid as described in the "Parties" paragraphs numbered 14 through 17 and the "Factual Allegation" paragraphs numbered 30 through 50.

85.     Defendants' conduct is unlawful because it is in violation of California Bus. & Prof. Code §§ 12606, 17200, and 17500; California Civil Code §§ 1750, et seq., California Health & Safety Code §§ 110290, 110295 and 110375; and Federal 15 USC 1453, and 15 USC 1454, in addition to potentially other statutory violations that will be added.

86.     By committing the acts alleged in this Complaint, Defendant has engaged in unfair business practices, in violation of the Unfair Practices Act, Bus. & Prof. Code §§ 17200, et seq. Defendant's conduct is unfair because, among other things, it is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and/or any utility of such practices is outweighed by the harm caused to consumers, including to Plaintiffs, the Class and the public.

87.     By committing the acts alleged in this Complaint, Defendant has engaged in fraudulent business practices, in violation of the Unfair Practices Act, Bus. & Prof. Code §§ 17200, et seq. Defendant's practices constitute fraudulent business practices because, among other things, they are likely to deceive reasonable consumers, including Plaintiffs and the Class,

and Defendants failed to disclose material facts.

88.     Reasonable consumers had no way of knowing that Defendant was engaging in false, deceptive, misleading practices, and therefore could not have reasonably avoided the injuries they suffered.

89.     Defendant's wrongful conduct complained of herein is ongoing and part of a generalized pattern or course of conduct repeated on thousands of occasions daily.  Defendant's representations and omissions were made with knowledge or reckless disregard of the laws of California, as well as the reasonable expectations of public consumers.

90.     Pursuant to California Business and Professions Code § 17203, Plaintiffs and the consumers that they seek to represent are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) restitution and/or disgorgement; (c) interest; and (d) attorneys' fees and costs pursuant to Cal. Code of Civil Procedure § 1021.5.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

91.     Plaintiffs hereby incorporate all preceding and succeeding paragraphs as though fully set forth herein.

92.     Plaintiffs bring this claim in the alternative and on a quasi-contract basis.

93.     Plaintiffs and the Class conferred a tangible economic benefit upon Defendant by purchasing their Products.

94.     Defendants had an appreciation or knowledge of the benefit conferred by Plaintiffs and the members of the Class.

95.     Plaintiffs and Class members would have expected remuneration from Defendants at the time this benefit was conferred had they known that they overpaid for Defendant's Products, in that their purchases did not genuinely contain the full amount of  Products as was represented by Defendant in an oversized package which was partially filled with the labeling of the net weight of the product obscured in small print or in a label graphic design.

96.     As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched at the expense of Plaintiffs and the Class members.

97.     It would be inequitable for Defendant to retain the benefits obtained by their wrongful conduct in the marketing and selling of these Products.

98.     Plaintiffs, on behalf of themselves and Class members, seek (a) restitution from Defendant and/or an order of disgorgement from the Court, (b) attorneys' fees pursuant to Cal. Code of Civil Procedure § 1021.5, (c) interest, in addition to any other relief that the Court may deem just and proper.

## FIFTH CAUSE OF ACTION

**Breach of Implied Warranty of Merchantability and/or of a Particular Purpose**

99.     Plaintiffs hereby incorporate all preceding and succeeding paragraphs as though fully set forth herein.

100.    Plaintiffs bring this claim in the alternative and on a quasi-contract basis.

101.    Defendant, as the designer, manufacturer, marketer, and distributor implied warranted that the Degree, Dove and Axe brands of stick antiperspirant/deodorant contained an adequate amount of product to sufficiently fill the packaging delivery system they proffered, without a significant amount of nonfunctional empty space which was concealed from the consumer via opaque packaging and obscure net weight labeling, thereby misleading the consumer into thinking they were getting more product than really existed.

102.    Defendant breached the implied warranty in quasi contract for the sale of the Degree, Dove and Axe brands of stick antiperspirant/deodorant because it could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the good were unfit for their intended and ordinary purpose because Unilever substantially under-filled the packaging containers.  As a result, Plaintiffs and the Class members did not receive the goods as implied warranted by the Defendant to be merchantable and/or for a particular purpose.

103.    Plaintiffs and Class members purchased the Degree, Dove and Axe brands of stick antiperspirant/deodorant in reliance upon Defendant's skill and judgment and the implied warranties of merchantability and/or for a particular purpose.

104.    The Degree, Dove and Axe brands of stick antiperspirant/deodorant were not

**Class Action Complaint**

altered by the Plaintiffs or the Class members.

105.    The Degree, Dove and Axe brands of stick antiperspirant/deodorant were defective when they left the exclusive control of the Defendant.

106.    Defendant knew that the Degree, Dove and Axe brands of stick antiperspirant/deodorant would be purchased without additional testing at the point of sale by Plaintiffs and the Class members.

107.    The product packaging for the Degree, Dove and Axe brands of stick antiperspirant/deodorant was defectively designed and unfit for its intended purpose and Plaintiffs and the Class members did not receive the goods as warranted.

108.    As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Degree, Dove and Axe brands of stick antiperspirant/deodorant on the same terms if the true facts were known concerning the quantity of product supplied; (b) they paid a price premium for Defendant's product because of Defendant's advertising the illusion that they were purchasing more product than they actually were, and (c) Defendant did not have the characteristics, benefits or quantities as promised.

109.    Plaintiffs, on behalf of themselves and Class members, seek (a) damages, (b) attorneys' fees pursuant to Cal. Code of Civil Procedure § 1021.5, (c) interest, in addition to any other relief that the Court may deem just and proper.

## SIXTH CAUSE OF ACTION

### Negligent Misrepresentation

### Cal. Civil Code §§ 1709, 1710, 1711 & 1714

110.    Plaintiffs hereby incorporate all preceding and succeeding paragraphs as though fully set forth herein.

111.    As described in the "Parties" paragraphs numbered 14 through 17 and the "Factual Allegation" paragraphs numbered 30 through 50 Defendant misrepresented that the Degree, Dove and Axe brands of stick antiperspirant/deodorant contained an adequate amount of product to sufficiently fill the packaging delivery system they proffered, without a significant amount of

**Class Action Complaint**

nonfunctional empty space which was concealed from the consumer via opaque packaging and obscure net weight labeling, thereby misleading the consumer into thinking they were getting more product than really existed.

112. At the time Defendant proffered these misrepresentations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

113. At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Degree, Dove and Axe brands of stick antiperspirant/deodorant.

114. The negligent misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase these products.

115. Plaintiffs and Class members would not have purchased these products if the true facts had been known to them, and thus the actions of Defendant caused damages to Plaintiffs and Class members.

116. Plaintiffs, on behalf of themselves and Class members, seek (a) damages, (b) attorneys' fees pursuant to Cal. Code of Civil Procedure § 1021.5, (c) interest, in addition to any other relief that the Court may deem just and proper.

## SEVENTH CAUSE OF ACTION

### Fraud & Deceit

### Cal. Civil Code §§ 1709, 1710, 1711 & 1714

117. Plaintiffs hereby incorporate all preceding and succeeding paragraphs as though fully set forth herein.

118. As described in the "Parties" paragraphs numbered 14 through 17 and the "Factual Allegation" paragraphs numbered 30 through 50 Defendant misrepresented that the Degree, Dove and Axe brands of stick antiperspirant/deodorant contained an adequate amount of product to sufficiently fill the packaging delivery system they proffered, without a significant amount of nonfunctional empty space which was concealed from the consumer via opaque packaging and

**Class Action Complaint**

obscure net weight labeling, thereby misleading the consumer into thinking they were getting more product than really existed.

119.   The misrepresentations and omissions made by Defendant were made with knowledge of their falsehood, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase these products.

120.   The fraudulent and deceitful actions of Defendant caused damages to Plaintiffs and the Class members.

121.   Plaintiffs, on behalf of themselves and Class members, seek (a) actual damages, (b) punitive damages, (c) attorneys' fees pursuant to Cal. Code of Civil Procedure § 1021.5, (d) interest, in addition to any other relief that the Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated individuals, pray for judgment as follows:

A.   Certification of the Class and/or Classes under Fed. Rule of Civil Procedure 23, and appointment of Plaintiffs as representatives of the Class and/or Classes, and their counsel as Class Counsel;

B.   Declaration that Defendants' conduct is deceptive and/or has a likelihood to deceive consumers and/or harm the general public;

C.   A temporary, preliminary and/or permanent order for injunctive relief requiring Defendants to: (1) discontinue providing non-functional slack fill within their products packaging and to provide clear labeling of the products' net weight; (2) undertake an immediate public information campaign to inform consumers, the general public, and members of the putative Class and/or Classes about Defendants' prior practices; and (3) to correct any erroneous impression consumers or the general public may have derived regarding the value of the Products including without limitation, the placement of corrective advertising and providing written notice to the public;

D.   An order requiring imposition of a constructive trust and/or disgorgement of

**Class Action Complaint**

Defendants' ill-gotten gains and to pay restitution to Plaintiffs and all members of the Classes and to restore to Plaintiffs and members of the Class and/or Classes all funds acquired by means of any act or practice declared by this Court to be unlawful, fraudulent or unfair business act or practice, a violation of law, statutes or regulations, or constituting unfair competition or false advertising;

E.      Distribution of any money recovered on behalf of members of the Class and/or Classes via fluid recovery or *cy pres* recovery, disgorgement of profits where necessary and as applicable, to prevent Defendants from retaining the benefits of their wrongful conduct;

F.      Compensatory, punitive, and other damages for economic and non-economic damages identified herein, including all damages allowed by governing statutes and/or common law theories;

G.      Statutory and pre-judgment and post-judgment interest on any amounts;

H.      Reasonable attorneys' fees as may be allowable under applicable law;

I.      Costs of this suit; and

J.      Such other and further relief as the Court may deem just and proper.

DATED:   August 26, 2020            **MARLIN & SALTZMAN, LLP**
                                    **LAW OFFICE OF W. HANSULT**

                                    By:    s/  Stanley D. Saltzman
                                           Stanley D. Saltzman, Esq.
                                           Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED:   August 26, 2020            **MARLIN & SALTZMAN, LLP**
                                    **LAW OFFICE OF W. HANSULT**

                                    By:    s/  Stanley D. Saltzman
                                           Stanley D. Saltzman, Esq.
                                           Attorneys for Plaintiffs

**Class Action Complaint**