1
2
3
4
5

**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
Joel M. Gordon, Esq. (SBN 280721)
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone:   (818) 991-8080
Facsimile:    (818) 991-8081
ssaltzman@marlinsaltzman.com
jgordon@marlinsaltzman.com

6

Attorneys for Plaintiffs

7

8    **UNITED STATES DISTRICT COURT**

9    **SOUTHERN DISTRICT OF CALIFORNIA**

10
11
12
13

NICOLE KRAUSE-PETTAI, SCOTT
GRIMM, STEVE TABU LANIER,
CHRISTY STEVENS, individually
and on behalf of all others similarly
situated,

14              Plaintiffs,

15    v.

16

17    UNILEVER UNITED STATES, INC.,
18    a corporation; and DOES 1-10,
      inclusive,
19
20              Defendants.

21

**CASE NO.  3:20-cv-01672-DMS-BLM**

**CLASS ACTION**

**PLAINTIFFS' MEMORANDUM OF
POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT
UNILEVER UNITED STATES,
INC.'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

Date:        March 19, 2021
Time:        1:30 p.m.
Ctrm:        13A
Judge:       Hon. Dana M. Sabraw

[Action Filed: August 26, 2020]

22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..............................................................................1

II.   RELEVANT FACTS ..........................................................................3

III.  LEGAL STANDARD ........................................................................5

IV.   ARGUMENT .....................................................................................6

      A.    Disclosure of Net Weight Does Not Free Defendant From Liability For Slack-Fill Claims ..........................................................6

      B.    There Is No Proper Safe Harbor Defense To Defendant's Misleading Packaging ...........................................................................9

      C.    There Is No Preemption Defense For Misleading Packaging ............10

      D.    Plaintiffs Have Sufficiently Pled That Slack-Fill Is "Non-Functional" ...............................................................................12

      E.    Plaintiffs Have Sufficiently Pled Fraud Under Rule 9(b) .................13

      F.    The Economic Loss Rule Does Not Apply .......................................16

      G.    Plaintiffs' Claim For Implied Warranty Is Sufficiently Pleaded........17

          1.    Plaintiffs were intended purchasers of Products ..................17

          2.    Plaintiffs sufficiently allege that Products are not merchantable ....................................................................18

      H.    Plaintiffs' Equitable Claims Are Sufficiently Pleaded......................18

          1.    Plaintiffs have alleged an inadequate legal remedy .............18

          2.    Plaintiffs have standing to seek injunctive relief .................20

      I.    Plaintiffs Have Standing To Assert Claims For All Products ...........21

      J.    Plaintiffs Have Adequately Pleaded Unjust Enrichment Under California Law .................................................................................23

      K.    Claims Brought By Plaintiffs Lanier and Stevens Are Not Time-Barred............................................................................24

V.    LEAVE TO AMEND.......................................................................25

VI.   CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co.*,
2010 WL 2925955 (EDNY 2010) ................................................. 13

*Amini v. AUS Marketing Research Sys. Inc.*,
2015 WL 12912309 (C.D. Cal. 2016) ........................................... 25

*Anderson v. Apple Inc.*,
2020 WL 6710101 (N.D. Cal. 2020) ....................................... 19, 22

*April Enterprises, Inc. v. KTTV*
(1983) 147 Cal.App.3d 805 ........................................................ 24

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ........................................... 11, 22, 23

*Azimpour v. Sears, Roebuck & Co.*,
2017 WL 1496255 (S.D. Cal. 2017) ............................................ 22

*Bank of the West v. Superior Court*,
2 Cal. 4th 1254 (1992) ................................................................. 8

*Barker v. Riverside County Office of Educ.*,
584 F.3d 821, 824 (9th Cir. 2009) ................................................ 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................... 5

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ...................................................... 18

*Branca v. Nordstrom, Inc.*,
2015 WL 10436858 (S.D. Cal. 2015) ..................................... 22, 23

*Broberg v. The Guardian Life Ins. Co. of America*
(2009) 171 Cal.App.4th 912 ....................................................... 24

*Brown v. Defender Sec. Co.*,
2012 WL 5308964 (C.D. Cal. 2012) .............................................. 5

*Bush v. Mondelez Int'l, Inc.*,
2016 WL 5886886 (N.D. Cal. 2016) ........................................ 7, 9

*Buso v. ACH Food Companies, Inc.*,
445 F. Supp. 3d 1033 (S.D. Cal. 2020) ........................................ 8

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ..................................................................10, 11

*Chacanaca v. Quaker Oats Co.*,
  752 F.Supp.2d 1111 (N.D. Cal. 2010) ..............................................14

*Clemens v. Daimler Chrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) .........................................................17

*Cortina v. Goya Foods, Inc.*,
  94 F.Supp.3d 1174 (S.D. Cal. 2015) ................................................22

*Davidson v. Kimberly-Clark Corp.*,
  873 F.3d 1103 (9th Cir. 2017) .........................................................20

*Dennis v. Ralph Lauren Corp.*,
  2017 WL 3732103 (S.D. Cal. 2017) ............................................21, 22

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ...................................................6, 9, 11

*Escobar v. Just Born Inc.*,
  2017 WL 5125740 (C.D. Cal. 2017) ........................................6, 7, 8, 9

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ...............................................................8

*Gest v. Bradbury*,
  443 F.3d 1177 (9th Cir. 2006) .........................................................21

*Hall v. City of Santa Barbara*,
  833 F.2d 1270, 1274 (9th Cir. 1986) .................................................5

*Hannibal Pictures, Inc. v. Sonja Prods. LLC*,
  432 F. App'x 700 (9th Cir. 2011) ....................................................16

*Hauter v. Zogarts*,
  14 Cal. 3d 104 (1975) ......................................................................18

*Hendricks v. StarKist Co.*,
  30 F. Supp. 3d 917 (N.D. Cal. 2014) ............................................1, 18

*Hobby Industry Assc. v. Younger*
  (1980) 101 Cal App 3d 358 ...............................................................2

*In re Hydroxcut Mktg. & Sales Practices Litig.*,
  2010 WL 1838080 (S.D. Cal. 2010) ................................................15

*In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*,
  2020 WL 6271173 (N.D. Cal. 2020) ................................................17

-iv-

*In Re MacBook Keyboard Litig.*,
   2020 WL 6047253 (N.D. Cal. 2020) ...................................................19

*In re Trader Joe's Tuna Litig.*,
   289 F. Supp. 3d 1074 (C.D. Cal. 2017) ..............................................18

*IntegrityMessageBoards.com v. Facebook, Inc.*,
   2020 WL 6544411 (N.D. Cal. 2020) ...................................................19

*Ivie v. Kraft Foods Global, Inc.*,
   2013 WL 685372 (N.D. Cal. 2013) .....................................................15

*Jones v. ConAgra Foods, Inc.*
   912 F. Supp. 2d 889 (N.D. Cal. 2012) ...........................................15, 24

*Kennard v. Lamb Weston Holdings, Inc.*,
   2019 WL 1586022 (N.D. Cal. 2019) ...................................................13

*Kline v. Iovate Health Scis. U.S.A., Inc.*,
   2017 WL 1135580 (S.D. Cal. 2017) ....................................................14

*Koehler v. Litehouse, Inc.*,
   2012 WL 6217635 (N.D. Cal. 2012) ...................................................20

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ................................................................5

*Lilly v. Jamba Juice Co.*,
   2015 WL 1248027 (N.D. Cal. 2015) ...................................................20

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) ............................................................25

*Lumbermens Mut. Cas. Co. v. Rhodes*,
   403 F.2d 2 (10th Cir. 1968) ...............................................................25

*Macaspac v. Henkel Corp.*,
   2018 WL 2539595 (S.D. Cal. 2018) .................................................7, 9

*Martinez-Leander v. Wellnx Life Scis., Inc.*,
   2017 WL 2616918 (C.D. Cal. 2017) .................................................7, 9

*McDougal v. County of Imperial*,
   942 F.2d 668 (9th Cir. 1991) ...............................................................5

*Miller v. Ghirardelli Chocolate Co.*,
   912 F.Supp.2d 861 (N.D. Cal. 2012) .............................................13, 22

*Morales v. Unilever U.S., Inc.*,
   2014 WL 1389613 (E.D. Cal. 2014) ...................................................21

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Mullins v. Premier Nutrition Corp.*,
178 F. Supp. 3d 867 (N.D. Cal. 2016) ...................................................................8

*Nathan v. Vitamin Shoppe, Inc.*,
2019 WL 1200554 (S.D. Cal. 2019) .....................................................................8

*NL Industries, Inc. v. Kaplan*,
792 F.2d 896 (9th Cir.1986) .................................................................................5

*NuCal Foods, Inc. v. Quality Egg LLC*,
918 F. Supp. 2d 1023 (E.D. Cal. 2013) ..............................................................16

*Padilla v. Whitewave Foods Co.*,
2019 WL 4640399 (C.D. Cal. 2019) ...................................................................13

*Reider v. Immaculate Baking Co.*,
2018 WL 6930890 (C.D. Cal. 2018) .....................................................................7

*Ries v. Arizona Beverages USA LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) .........................................................................20

*Robinson Helicopter Co. v. Dana Corp.*,
34 Cal. 4th 979 (2004) ........................................................................................16

*Roper v. Big Heart Pet Brands, Inc.*,
No. 2020 WL 7769819 (E.D. Cal. 2020) .............................................................19

*Rutherford Holdings, LLC v. Plaza Del Rey*,
223 Cal.App.4th 221Cal.Rptr.3d 864, 872 (2014) .............................................23

*Samet v. Procter & Gamble Co.*,
2013 WL 3124647 (N.D. Cal. 2013) ...............................................................11, 13

*Sandoval v. PharmaCare US, Inc.*,
145 F. Supp. 3d 986 (S.D. Cal. 2015) ..................................................................11

*Semegen v. Weidner*,
780 F.2d 727 (9th Cir. 1985) ...............................................................................14

*Smith v. Jackson*,
84 F.3d 1213 (9th Cir. 1996) ..................................................................................5

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ...............................................................................18

*Spann v. J.C. Penney Corp.*, 2015 WL 1526559 (C.D. Cal. 2015) .....................20

*Tyler v. Cisneros*,
136 F.3d 603 (9th Cir. 1998) ...............................................................................14

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*U.S. S.E.C. v. ICN Pharm., Inc.,*
  84 F. Supp. 2d 1097, 1098 (C.D. Cal. 2000) ........................................5

*United States v. City of Redwood City,*
  640 F.2d 963 (9th Cir. 1981) ...............................................................5

*Walling v. Beverly Enters.,*
  476 F.2d 393 (9th Cir. 1973) ...............................................................5

*Westlands Water Dist. v. Firebaugh Canal,*
  10 F.3d 667, 670 (9th Cir.1993) ..........................................................5

*White v. Lee,*
  227 F.3d 1214 (9th Cir. 2000) ...........................................................21

*Williams v. Gerber Prods. Co.,*
  552 F.3d 934 (9th Cir. 2008) ...........................................6, 8, 13, 15

*Zakaria v. Gerber Prod. Co.,*
  2015 WL 3827654 (C.D. Cal. 2015) ..................................................17

*Zeiger v. WellPet LLC,*
  304 F. Supp. 3d 837 (N.D. Cal. 2018) ...............................................17

**Statutes**

Cal. Bus. & Prof. Code § 12603(b) ........................................................9

Cal. Bus. & Prof. Code § 12606 ....................................................1, 2, 12

Cal. Bus. & Prof. Code § 12606(b) .................................................1, 6, 12

Cal. Civ. Code § 3294(a) ......................................................................16

Cal. Civ. Code § 3294(c)(3) .................................................................16

Cal. Com. Code § 2314(2)(a) ...............................................................18

Cal. Health & Safety Code § 109875 et seq. ........................................12

**Rules**

Fed. R. Civ. P. 8(a)(3)..........................................................................24

Fed. R. Civ. P. 15(a) ........................................................................5, 25

**Regulations**

21 C.F.R. § 201.62 ................................................................................................9

21 C.F.R. § 701.13(a) .........................................................................................9

21 U.S.C. § 362(a) .............................................................................................12

21 U.S.C. § 379s(a) ...........................................................................................11

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# I.   INTRODUCTION

Federal and California law prohibit the packaging of food and cosmetics products with non-functional "slack-fill," in containers that do not allow a consumer to fully view the products' contents. In California, slack-fill is defined as the "difference between the actual capacity of a container and the volume of product contained therein." Cal. Bus. & Prof. Code § 12606(b).

Plaintiffs Nicole Krause-Pettai, Scott Grimm, Steve Tabu Lanier, and Christy Stevens ("Plaintiffs") all purchased solid stick-style antiperspirant and/or deodorant products, under the brand names of Degree, Dove and Axe (the "Products"), basing their decision to buy the Products on the apparent volume of deodorant inside. The packaging for all Products was opaque, with only the "net weight", and no other indication of volume, noted in small print on the label. (*See* Defendant's Request for Judicial Notice., Exs. A-E.) When Plaintiffs began using the Products, they discovered that up to 40% of the packaging was empty—in other words, the packaging contained at least 40% nonfunctional slack-fill. For reasons that will hopefully become more clear as the case develops, Defendant Unilever United States, Inc. ("Defendant" or "Unilever") literally chose to sell a product in a package that contained up to 40% of nothing but air.

Unilever hopes to avoid liability for misleading consumers by repeatedly pointing to the "net weight" labeling, which does little to guide the reasonable consumer seeking to judge how much product is inside of the container as compared to similar products by Defendant's competitors. *See Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 932 (N.D. Cal. 2014) ("The appearance of the can itself, not its label, is what Plaintiff alleges to be misleading"). The California Fair Packaging & Labeling Act, under Business and Professions (B&P) Code § 12606, states:

> (a) No container wherein commodities are packed shall have a false bottom, false sidewalls, false lid or covering, or be otherwise so constructed or filled, wholly or partially, as to facilitate the perpetration of deception or fraud.  (b) No container shall be made, formed, or filled

as to be misleading. A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill. Slack fill is the difference between the actual capacity of a container and the volume of product contained therein.

It is apparent that the remedies of Sections 17200 et seq. apply to any unlawful business practice.  The nonfunctional slack-fill prohibitions of Section 12606 unquestionably fall within the broad definition of an unlawful business practice. *Hobby Industry Assc. v. Younger* (1980) 101 Cal App 3d 358, 371.

At issue in this case is how Defendant misrepresented the amount of product inside of the packaging, in violation of state consumer laws. Although "net weight" was displayed in small print on the label, a reasonable consumer would not be expected to deduce, based on just the net weight of deodorant, how much volume of usable product is actually inside of the package. Defendant cites several slack-fill cases that ruled in defendants' favor, but, in every single one of them, the manufacturers included information other than net weight on the labels, such as serving size. These cases are easily distinguishable from the Products at issue here. For Plaintiffs, there was simply no way to determine if the opaque containers Defendant used held more or less product than those of Defendant's competitors.

In addition to claiming that a reasonable consumer should be able to divine the amount of product inside of the opaque package based merely on net weight, Defendant also claims that listing net weight should free Unilever from liability by way of safe harbor provisions in the Food Drug and Cosmetics Acts ("FDCA") and California's Fair Packaging and Labeling Act ("FPLA"). This argument ignores that the safe harbor provisions are not designed to make unlawful activity (non-functional slack-fill, misleading advertising) lawful, and that the FDCA and FPLA, even if they were relevant to the statutes under which Plaintiffs bring their claims, both allow for the inclusion of supplemental information regarding the accurate amount of product contained within the packaging.

Plaintiffs have sufficiently pled their fraud claims under Rules 12(b)(6) and

9(b), despite Defendant requesting a far higher standard of fraud than required under federal or California law. The Court should also deny the Motion's remaining requests to dismiss (1) common-law fraud claims based on the economic loss rule, (2) implied warranty of merchantability claims, (3) equitable claims, including injunctive relief, and (4) unjust enrichment. Plaintiffs also have standing to assert claims about unpurchased products under the Degree, Dove, and Axe brands because the central issues in the case involve packaging and labeling common to all brands. Finally, the Court should deny Defendant's request to dismiss the claims of Plaintiff Lanier and Stevens based on the statute of limitations, or grant leave for Plaintiffs to amend the complaint to correct this, or any of the above issues.

## II.    RELEVANT FACTS

Plaintiffs filed this action on behalf of themselves and a putative class of California consumers for misleading and fraudulently packaged products put into the stream of commerce by Defendant.  First Amended Complaint ("FAC") ¶ 1. During the relevant time, Plaintiffs purchased various brands from among the Products. FAC ¶¶ 11-14. The Products were packaged with a very significant amount (approximately 40%) of "nonfunctional slack fill," which was not detectable by the consumer due to the opaque coloring of the packaging and imperceptible labeling weight of the deodorant. Plaintiffs believed they were getting much more volume of deodorant than the size of the package portrayed. Id.

Plaintiff Krause-Pettai, on multiple occasions, purchased Dove "Go Fresh" stick antiperspirant & deodorant from retailers in San Diego County. FAC ¶ 11. Plaintiff Grimm, on multiple occasions, purchased Men Degree Motion Sense "Everest" and "Sport Defense" stick antiperspirant & deodorant from retailers in Orange County. FAC ¶ 12. Plaintiff Lanier, on multiple occasions, purchased Axe Antiperspirant Stick for Men, "Dark Temptation" from retailers in San Diego County. FAC ¶ 13. Plaintiff Stevens, on multiple occasions, purchased Degree Women Antiperspirant Deodorant Stick "Shower Clean" from retailers in

Sacramento County. FAC ¶ 14. All Plaintiffs allege that they could not see how much product was in the packages because the packages were opaque, but all chose the Products because it appeared they were getting more product for a similar price as compared to other brands of stick deodorant. FAC ¶¶ 11-14.

After some time of use, Plaintiffs noticed that even when the Products were brand new and supposedly filled to capacity, that the products were top-heavy and easily toppled over when placed upon the bathroom counter, in a similar manner as when the products were almost depleted. FAC ¶¶ 28, 34.   As a result, they all concluded this could only be the result of there being empty space in the packages. Id. Thereafter, Plaintiffs made note of the net weight of the product (which they eventually found in small print) and compared this net weight, to the net weight of the competitors' products in the smaller packaging with the same delivery system, and found that the net weight was the same. Id.  Ergo, the Defendant's packaging had deceived them into thinking they were getting more product than they were. Id.

Because there is no functional reason for the empty space in Defendant's product packaging and it knowingly hid this empty space from the consumer with opaque packaging, Defendant was well aware that it was putting the products into the stream of commerce with illegal slack fill. FAC ¶ 36. Defendant knew and was well aware that if it marketed its "products" in a package much larger than necessary for functionality, that the consumer would think they were getting more volume of deodorant than they really purchased, thus not only deceiving the consumer, but also getting a distinct market edge on its competitors. Id.

Plaintiffs brought this action on behalf of themselves and the putative class, alleging violations of the False Advertisement Law (Cal. Bus. & Prof. Code § 17500, et seq.); violations of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.); violations of the Consumer Legal Remedies Act (California Civil Code § 1750, et seq.); Breach of Implied Warranty for damages; Negligent Misrepresentation (California Civil Code §§ 1709, 1710, 1711 & 1714)  for

-4-

damages; and Fraud & Deceit (California Civil Code §§ 1709, 1710, 1711 & 1714) for damages and punitive damages. FAC ¶ 1.

## III.    LEGAL STANDARD

To survive a motion to dismiss, a plaintiff need only allege facts that are enough to raise his or her right to relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In determining whether Plaintiff has stated sufficient facts such that the claim is plausible, "[a]ll allegations of material facts are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the court must "draw inferences in the light most favorable to the plaintiff." *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *see also U.S. S.E.C. v. ICN Pharm., Inc.*, 84 F. Supp. 2d 1097, 1098 (C.D. Cal. 2000) ("The court must accept as true the factual allegations of the complaint and indulge all reasonable inferences to be drawn from them, construing the complaint in the light most favorable to the Plaintiff.") (citing *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir.1993); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973). A court will not normally look beyond the four corners of the complaint in resolving a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

In the Ninth Circuit, the Rule 12(b)(6) motion is viewed with disfavor and is rarely granted. *McDougal v. County of Imperial*, 942 F.2d 668, 676 n.7 (9th Cir. 1991) (quoting *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986)). "For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6)." *Brown v. Defender Sec. Co.*, 2012 WL 5308964 *2 (C.D. Cal. Oct. 22, 2012) (citing *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). As a general rule, leave to amend a complaint should be freely granted. Fed. R. Civ. P. 15(a).

IV.   **ARGUMENT**

A.   **Disclosure of Net Weight Does Not Free Defendant From Liability For Slack-Fill Claims**

Defendant argues that it is immune from liability under the CLRA, FAL, and UCL because the packaging for the Products lists the net weight, and that listing the net weight adequately informs the reasonable consumer of how much product is inside the package. *See* Motion pp. 6-7. Defendant cites a line of slack-fill cases easily distinguishable from Plaintiffs' case by the fact that the Products at issue here list only the net weight rather than any other type of identifiable quantity. Id. However, the indication of only net weight is inadequate in California, where slack fill is the "difference between the actual capacity of a container and the volume of product contained therein." Cal. Bus. & Prof. Code § 12606**Error! Bookmark not defined.**(b).

How much can a reasonable consumer rely on only the listing of net weight for a food or cosmetics product? How would a reasonable consumer even know how much space 2.7 oz of a product would take up in a package?  In a 2017 slack-fill case not cited by Defendant, the Central District included a helpful analysis of litigation in which defendants sought to protect themselves from liability by noting accurate weight listings on packages. *Escobar v. Just Born Inc.*, No. CV1701826BROPJWX, 2017 WL 5125740, at *9 (C.D. Cal. June 12, 2017). The *Escobar* court quoted the Ninth Circuit, in *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008), as rejecting the defendant's argument "that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams* at 938.  Instead, the Ninth Circuit in *Williams* determined that "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." *Id*. at 939-40; *see also Ebner v. Fresh, Inc*., 838 F.3d 958, 966 (9th Cir. 2016) ("Stated straightforwardly, *Williams* stands for the proposition that if the

defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception.") For the facts presented by *Escobar*, which apply directly to the argument made by Plaintiffs against Unilever:

> ***A reasonable consumer is not necessarily aware of a product's weight or volume and how that weight or volume correlates to the product's size.*** In other words, the fact that the Products' packaging accurately indicated that a consumer would receive 141 grams or 5 ounces of candy does not, on its own, indicate to a reasonable consumer that the Products' box may not be full of candy and that, instead, 35.7% of the box is empty. Rather, a reasonable consumer may believe that 141 grams or five ounces of candy is equivalent to an amount approximately the size of the Products' box.

*Escobar v. Just Born Inc.*, 2017 WL 5125740, at *9 (emphasis added).

*Escobar*, in which the packaging only listed net weight, leaving the consumer uninformed about how that weight correlates to volume, is more analogous to Plaintiffs case than the cases cited by Defendant. In fact, all of Defendant's cases are distinguishable on this issue. In one, snack-food packaging disclosed the number of snacks inside the packaging, not just the weight.  *Bush v. Mondelez Int'l, Inc.*, No. 16-cv-2460-RS, 2016 WL 5886886, at *3 (N.D. Cal. Oct. 7, 2016). In another, the court did not determine that "product is not deceptive when it accurately reported the product's net weight," as Defendant misleadingly states in its Motion (p. 7); instead, the court determined that the product is not deceptive because its packaging was transparent and consumers could view the slack fill easily before purchase. *Macaspac v. Henkel Corp.*, No. 3:17-cv-01755-H-BLM, 2018 WL 2539595, at *5-6 (S.D. Cal. June 4, 2018).  In a third case, the packaging at issue listed the exact number of pills inside, not just the net weight. *Martinez-Leander v. Wellnx Life Scis., Inc.*, No. 16-08220 SJO (Ex), 2017 WL 2616918, at *8 (C.D. Cal. Mar. 6, 2017). ). In a fourth, the court determined that a consumer need not be able to determine the package's weight-to-volume ratio because the number of servings is also listed on the package. *Reider v. Immaculate Baking Co.*, No. 8:18-CV-01085-JLS-AS, 2018 WL 6930890, at *3 (C.D. Cal. Nov. 8, 2018).

As the court in *Buso v. ACH Food Companies, Inc.*, 445 F. Supp. 3d 1033, 1039 (S.D. Cal. 2020) explains, while distinguishing the facts at issue there with the facts in *Escobar*, "Unlike Plaintiff's instant case, *Escobar* did not disclose any details of the product aside from the net weight." The same is true here as it is in *Escobar*. The Products at issue have no indication of how much deodorant is available for use inside of the packaging, and a listing of net weight alone does not sufficiently provide this information. The slack-fill was not perceptible due to the opaque packaging. FAC ¶¶ 2, 11-14; *see also* Request for Judicial Notice, Exs. A-E. The listing of "net weight" was printed small and did not alert Plaintiffs as to the actual volume of available product inside of the packaging. FAC ¶¶ 27, 77, 83, 93. Unlike in the cases cited by Defendant, there was no other indication of quantity aside from "net weight," no equivalent to serving size, and no transparent place in the packaging through which to view the actual amount inside.

The claims asserted in the FAC are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d at 938. Thus, plaintiff must "show that 'members of the public are likely to be deceived.'" *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992)). Whether a reasonable consumer would be deceived "will usually be a question of fact not appropriate for decision" at the pleading stage. *Williams*, 552 F.3d at 938. Moreover, on a motion to dismiss, this Court "cannot hold as a matter of law that disclaimers vitiate claims for misleading representations." *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 892 (N.D. Cal. 2016); *Nathan v. Vitamin Shoppe, Inc.*, No. 317CV01590BENKSC, 2019 WL 1200554, at *5 (S.D. Cal. Mar. 14, 2019) ("By asking the Court to resolve whether a reasonable consumer would be deceived, Defendant asks the Court to make a determination of fact inappropriate at the motion to dismiss stage.")

Even if this were an appropriate evaluation to make at the pleadings stage, the FAC sufficiently demonstrates that a reasonable consumer would believe that

the Products contained more deodorant than they actually did, because the opaque packaging concealed the slack-fill while misrepesenting the volume of deodorant inside. FAC ¶¶ 27, 34. As stated above, the slack-fill cases cited by Defendant do not involve packaging that merely stated the product's net weight to inform consumers of the amount inside. The products also listed the number of snack foods (*Bush v. Mondelez Int'l, Inc.*) or pills (*Martinez-Leander v. Wellnx Life Scis., Inc*) inside, or, in one case, were packaged inside of transparent material that allowed consumers to see that the product had been slack-filled (*Macaspac v. Henkel Corp*). In any of those scenarios, a reasonable consumer would have multiple pieces of information from which to deduce the true amount of product. Plaintiffs, however, can only rely on "net weight," which appears on the outside of an opaque container that does not show the volume of deodorant inside. As in *Escobar*, there is no reason to believe that one product at a particular weight would somehow equal the same volume of a product with the same weight. *See Escobar v. Just Born Inc.,* 2017 WL 5125740, at *9. These are not calculations that a reasonable consumer can be expected to make while in the aisle of a market, choosing a deodorant brand.

## B. There Is No Proper Safe Harbor Defense To Defendant's Misleading Packaging

The FDCA and FPLA require a listing of "net quantity," including weight, but those provisions do not make lawful the packaging's clear violations of California's consumer fraud statutes. *See* 21 C.F.R. § 701.13(a), 21 C.F.R. § 201.62, and Cal. Bus. & Prof. Code § 12603(b). Even if the safe harbor provisions were relevant, the FDCA and FPLA allow for the inclusion of supplemental information regarding the accurate amount of product contained within the packaging. Defendant is attempting to use a narrow provision as an excuse to mislead consumers about the actual amount of product inside of their packaging.

In addition to wrongly asserting that a small-print mention of "net weight" is enough to avoid liability through the relevant safe harbor provisions, Defendant also fails to accept that these safe harbors do not apply to the omission of necessary

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

information. In *Ebner v. Fresh, Inc*., 838 F.3d 958 (9th Cir. 2016), cited throughout Defendant's Motion, the Ninth Circuit held that compliance with FDA labeling requirements does not create a safe harbor for all omissions. Id. at 964. In *Ebner*, the product at issue complied with labeling requirements because the label accurately stated that the packaging contained 4.3 grams of product even though because of the design of the packaging, only 3.3 grams were usable by a consumer. Id. at 965–66. The Ninth Circuit held that compliance with the disclosure requirement of the weight of the product did not preclude a cause of action based on the omission of the actually available weight because "there is no law expressly permitting the omission" of statements that would clarify the amount of product that was actually available to consumers. *Id*. To fall within the safe harbor, the challenged conduct must be "affirmatively permitted by statute—the doctrine does not immunize from liability conduct that is merely not unlawful." *Id*.

Here, listing the Products' "net weight" may satisfy certain laws that dictate labeling requirements, but Plaintiffs are not bringing this action based on mislabeling. They are bringing this action based on the misrepresentations of its packaging. Even if Defendant adequately fulfilled the minimal requirements of the FDCA and FPLA to list "net weight," these requirements do not provide a safe harbor for liability with regard to the packaging, which disguises its unlawful use of nonfunctional slack-fill. As the court in *Cel-Tech* held, "There is a difference between (1) not making an activity unlawful, and (2) making that activity lawful… acts may, if otherwise unfair, be challenged under the unfair competition law even if the Legislature failed to proscribe them in some other provision." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163, 182 (1999).

## C.   There Is No Preemption Defense For Misleading Packaging

Defendant further argues that even if Plaintiffs were deceived by the small-print labeling of the Products' net weight, the claims are preempted to the extent they seek to impose additional labeling requirements beyond those set forth under

the FDCA. *See* Motion pp. 9-10. First, this is a misleading summary of the FAC, which does not seek to impose liability on Defendant for its labeling. Rather, the FAC attacks the Products' misleading packaging, which fraudulently promises more of the products than is delivered. This is in line with the distinction made in *Cel-Tech* between not making certain activity unlawful (labeling of net weight in accordance with FDCA and FPLA provisions) and making certain activity lawful (packaging that misleads in violation of slack-fill laws).

Federal preemption, either express or implied, is not applicable to this issue. Courts have found that a Motion to Dismiss is not the proper venue for an analysis of federal preemption doctrine under the FDCA and California state law. *See Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 995 (S.D. Cal. 2015) (concluding that the plaintiff's state Sherman Law, UCL, FAL, and CLRA claims regarding an over-the-counter sexual performance drug were not impliedly preempted); *Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *6 (N.D. Cal. June 18, 2013) ("Drawing all inferences in favor of Plaintiffs, as required for purposes of a motion to dismiss, the court finds Plaintiffs have alleged that Defendants violated the FDA regulation governing slack-fill and thus the claim is not preempted.") The *Ebner* court also declined to apply this preemption analysis to plaintiff's claim that supplemental labeling might be required on a slack-filled product. The relevant FDCA provision states:

> [N]o State ... may establish or continue in effect any requirement for labeling or packaging of a cosmetic that is different from or in addition to, or that is otherwise not identical with, a requirement specifically applicable to a particular cosmetic or class of cosmetics under this chapter.

21 U.S.C. § 379s(a). However, § 379s "does not preempt state laws that allow consumers to sue cosmetics manufacturers that label or package their products in violation of federal standards." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 757 (9th Cir. 2015) (emphasis added). In challenging the omission of supplemental statements about product weight, the plaintiff in *Ebner* sought to enforce § 111730

of California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875 et seq., which states that "[a]ny cosmetic is misbranded "if its labeling is false or misleading in any particular." *Ebner v. Fresh, Inc.*, 838 F.3d at 965. The language in the Sherman Law is virtually identical to the language in the FDCA, which states that a "cosmetic shall be deemed to be misbranded if its labeling is false or misleading in any particular." 21 U.S.C. § 362(a). In other words, both the federal FDCA and California's Sherman Law prohibit the false or misleading labeling of a cosmetic. Therefore, the state-law duty that Plaintiffs seek to enforce under the Sherman Law is identical to Defendant's federal duty under the FDCA: the duty to avoid false or misleading labeling. As with *Ebner*, "Whether or not the lack of a supplemental statement rendered the accurate net weight label deceptive goes to the merits of the claim, not the question of federal preemption." *Ebner v. Fresh, Inc.*, 838 F.3d at 965.

### D.  Plaintiffs Have Sufficiently Pled That Slack-Fill Is "Non-Functional"

As stated above, slack fill is the "difference between the actual capacity of a container and the volume of product contained therein." B&P Code § 12606 (b). The FAC sufficiently pleads this issue, noting that the slack-fill space was added into the packaging as an inducement for consumers to buy the Products as opposed to those of its competitors. FAC ¶¶ 3, 29, 24. Further, this inducement, based on the nearly 40% of nonfunctional empty package space, was the reason why Plaintiffs purchased the Products. FAC ¶¶ 11-14. Plaintiffs also discovered that since competing products did not feature this amount of empty space, there was likely no function to the slack-fill other than inducement to buy the product. FAC ¶ 31.

Defendant lists all of the possible reasons why slack-fill, under California law, might be considered "functional" and insists that the burden is on Plaintiffs to prove that statutory exceptions do not apply. *See* Motion, p. 11 (*citing* Cal. Bus. & Prof. Code § 12606). Notably, Defendant does not specify which of the safe harbor provisions it thinks allow Unilever to leave so much empty packaging, unlike that

-12-

of competitors' deodorant products. This is a fact-specific issue that cannot be decided at the pleadings stage. *See Kennard v. Lamb Weston Holdings, Inc.*, 2019 WL 1586022 at \*8-9 (N.D. Cal., April 12, 2019) (holding that while defendant may ultimately be correct that one of the safe harbor provisions apply to their use of slack-fill the court will not resolve that issue on a motion to dismiss).

Defendant's tries to incorrectly shift the burden of proof as to the applicability of the slack-fill exceptions, safe harbor provisions that courts treat as an affirmative defense rather than an affirmative pleading requirement." *Padilla v. Whitewave Foods Co*., No. LACV1809327JAKJCX, 2019 WL 4640399 at \*13 (C.D. Cal. July 26, 2019) (denying motion to dismiss based on Plaintiffs' not affirmatively pleading that slack-fill safe harbor provisions do not apply). Furthermore, Defendant incorrectly asserts that Plaintiffs must prove the truth of its claim that Defendant's products are slack-filled.  Questions of ultimate fact, such as whether a practice is in fact deceptive, are inappropriate for resolution on a motion to dismiss. *See Williams v. Gerber Prods, Co*., 552 F.3d at 938. ("[T]he motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case.") (quoting 5 Wright & Miller, Federal Practice and Procedure § 1356); *Ackerman v. Coca-Cola Co*., No. CV-09-0395, 2010 WL 2925955, at \*4 (EDNY July 21, 2010) ("Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint."); *Samet v. Procter & Gamble Co*, No. 5:12-CV-01891, 2013 WL 3124647, at \*9 (N.D. Cal. June 18, 2013) (finding that "the amount of slack-fill expected by the reasonable consumer is a debatable factual question that is inappropriate to resolve at the motion to dismiss stage").

### E.    Plaintiffs Have Sufficiently Pled Fraud Under Rule 9(b)

The Ninth Circuit has interpreted Rule 9(b) to require that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the

charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). In evaluating the allegations, the Court must give the plaintiff the benefit of every inference that reasonably may be drawn from well-pleaded facts. *Tyler v. Cisneros*, 136 F.3d 603, 607 (9th Cir. 1998).

Here, the Complaint alleges the details of each Plaintiff's transactions with particularity. *See* FAC ¶¶ 11-14, 25-34. On their face, these allegations are sufficient to give Defendants ample notice of the particular circumstances of Plaintiffs' claims against them, and therefore satisfy Rule 9(b)'s burden. *See Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1126 (N.D. Cal. 2010) ("[P]laintiffs have identified the particular statements they allege are misleading, the basis for that contention, where those statements appear . . . , and the relevant time period in which the statements were used. As such, they have satisfied the requisite who, what, when, where, and how of the misconduct charged"). Nevertheless, Defendants ask the Court to impose a more demanding standard than the law allows.  The Court should reject that invitation and deny the Motion.

First, Plaintiffs sufficiently pled *what* products were purchased. FAC ¶¶ 11-14. It is not necessary to state which sub-brands were purchased, which of the available sizes, or to provide photographs in the FAC. FAC ¶¶ 11-14, 23-34. In a case cited by Defendant, fraud allegations must be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Kline v. Iovate Health Scis. U.S.A., Inc.*, No. 3:15-CV-02387, 2017 WL 1135580, at *4 (S.D. Cal. Mar. 27, 2017). Although there are several sub-brands of various sizes that Plaintiffs could have purchased, they all have identically misleading packaging. As the Defendant's Request for Judicial Notice, Exs. A-E, shows, the packaging on all Defendant's deodorant products is opaque, with similar weights, demonstrating that the same level of nonfunctional slack-filled allegation for one product is alleged for all others under those brand names.

Second, Plaintiffs sufficiently pled *when* products were purchased. FAC ¶¶ 11-14. In the case cited by Defendant, a plaintiff's case was dismissed because he only alleged that he bought the products at issue "prior to May 2009." *In re Hydroxcut Mktg. & Sales Practices Litig.*, No. 09MD2087-BTM (AJB), 2010 WL 1838080, at *2 (S.D. Cal. May 5, 2010). Instead, plaintiff "must state when (or the time period during which) he saw, heard, and/or read and relied upon the allegedly fraudulent material." *Id.* Here, Plaintiffs sufficiently plead this standard, noting throughout the FAC that the purchases were made "during the class period," which is defined as "within the applicable statutory limitations period." FAC ¶¶ 11-14, 26.

Third, Plaintiffs sufficiently alleged reasonable reliance by pleading that a reasonable consumer is likely to be deceived by Defendant's product packaging. FAC ¶ 3, 31-34. ("consumers relied upon the size of the packaging as a gauge to how much product they were receiving"). These allegations are sufficient to demonstrate reasonable reliance. *See Jones v. ConAgra Foods, Inc*. 912 F. Supp. 2d 889, 901 (N.D. Cal. 2012) (finding plaintiffs' allegations that they relied on the antioxidant claims on defendant's product labels sufficient to show reasonable reliance). Once again, Defendant is inventing a more stringent standard, akin to summary judgment, in order to claim that reliance was not sufficiently pled.

As explained above, Plaintiffs' claims meet the applicable standard for finding that Defendant's conduct could deceive a reasonable consumer. *See Williams v. Gerber Prods, Co*., 552 F.3d at 939 (finding that the features of the defendant's Fruit Juice Snacks "could likely deceive a reasonable consumer" despite accurate listing of ingredients in small print on the label); *Ivie v. Kraft Foods Global, Inc*., No. 12-cv-02554, 2013 WL 685372, at *11 (N.D. Cal. Feb. 25, 2013) (finding allegations that "Defendants routinely employed slack filled packaging to mislead consumers" and "lacked any lawful justification for doing so" sufficient to state a claim). Plaintiffs also sufficiently pled FAC's allegations regarding the non-applicability of the FDCA and FPLA safe harbor provisions. (*See* pp. 10-12, *supra*).

Finally, Plaintiffs sufficiently pled punitive damages. California law provides that punitive damages are only available "where it is proven with clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice." Cal. Civ. Code § 3294(a). In (c)(3) of this code section, "fraud" includes "intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Defendant seeks dismissal of Plaintiffs' punitive damages claims based on the erroneous argument that Plaintiffs failed to sufficiently allege facts to support that Defendant is guilty of "oppression, fraud or malice." However, Plaintiffs do make such allegations, noting in the FAC that Defendant intentionally misled consumers throughout the statutory period. *See e.g.* FAC ¶¶ 4, 45, 88, 94. Accordingly, Defendant's motion to dismiss Plaintiffs' request for punitive damages should be denied.

## F. The Economic Loss Rule Does Not Apply

The economic loss rule "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). Defendant claims that because Plaintiffs "have not otherwise pled any facts to support an exception, their fraudulent-omission claim should be dismissed." Motion, p. 14. However, California courts allow an exception to this rule for cases involving intentional misrepresentation.

Courts in California have allowed intentional misrepresentation claims to proceed, notwithstanding the economic loss rule. *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1032–33 (E.D. Cal. 2013) (declining to apply the economic loss rule to a case alleging intentional fraud and noting that "the economic loss rule is designed to limit liability in commercial activities that negligently or inadvertently go awry, not to reward malefactors who affirmatively misrepresent and put people at risk") (quoting *Robinson*, 34 Cal. 4th at 991 n.7); *Hannibal*

*Pictures, Inc. v. Sonja Prods. LLC*, 432 F. App'x 700, 701 (9th Cir. 2011) (upholding a jury verdict in favor of a negligent misrepresentation claim and stating that the court "declined to apply the economic loss rule to fraud and misrepresentation claims where, as here, one party has lied to the other."); *Zakaria v. Gerber Prod. Co., No*. LA CV15-00200 JAK EX, 2015 WL 3827654, at *11 (C.D. Cal. June 18, 2015) ("California law classifies negligent misrepresentation as a species of fraud, for which economic loss is recoverable.")

In the FAC, Plaintiffs have pled affirmative misrepresentation, noting that Defendant knew the Products contained non-functional slack-fill, and that the fraudulent packaging would induce consumers to buy the Products, before putting the Products into the stream of commerce. FAC ¶¶ 4, 45, 88, 94. Therefore, the intentional misrepresentation exception to the economic loss rule is satisfied, and the Motion should be denied as to Plaintifs' common-law fraud claims.

### G. Plaintiffs' Claim For Implied Warranty Is Sufficiently Pleaded

#### 1. Plaintiffs were intended purchasers of Products

For its contention that a breach of implied warranty claim requires vertical privity between Plaintiffs and Unilever, Defendant cites *Clemens v. Daimler Chrysler Corp*., 534 F.3d 1017, 1024 (9th Cir. 2008). The court acknowledged, however, that "[s]ome particularized exceptions to the [privity] rule exist. The first arises when the plaintiff relies on written labels or advertisements of a manufacturer, which the *Clemens* court notes the plaintiff in that case did not assert. *Id.* at 1023. However, this "third-party beneficiary exception" has been accepted by California Courts of Appeal. *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 854 (N.D. Cal. 2018) (collecting cases).

Under the third-party beneficiary exception, Plaintiffs here contend—and Defendant notably does not contest—that Plaintiffs were intended purchasers and did purchase Unilever products, even if through retailers and not directly from Defendant. *See In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig*.,

No. 19-MD-02913-WHO, 2020 WL 6271173, at *49 (N.D. Cal. Oct. 23, 2020). Therefore, the implied warranty claim should not be barred for lack of privity.

### 2. Plaintiffs sufficiently allege that Products are not merchantable

In addition to not being barred by lack of privity, Plaintiffs' implied warranty claim sufficiently alleges that the Products were not merchantable. Defendant claims that a warranty can only be breached if the product lacks "even the most basic degree of fitness for ordinary use." Motion p. 16 (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009)), adding that Plaintiffs have not alleged facts sufficient to show this breach.

While again ignoring the relevant allegations meeting this standard (*see* FAC ¶¶ 84, 89), Defendant again misreads the relevant standard for a breach of implied warranty, which actually requires goods to be "adequately contained, packaged, and labeled as the agreement may require; and ... [to] conform to the promises or affirmations of fact made on the container or label." Cal.Com.Code § 2314(2)(a). The FAC sufficiently sets forth a claim that the Products here were not adequately packaged, consistent with an implied promise that they were adequately filled with deodorant product. Thus, a plausible claim for breach of the implied warranty of merchantability claim is stated. *See Hauter v. Zogarts*, 14 Cal. 3d 104, 117–18, 120 Cal.Rptr. 681, 534 P.2d 377 (1975) ("Merchantability has several meanings ... [including that] the product must conform to the promises or affirmations of fact made on the container or label."); *Hendricks v. StarKist Co*., 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014); *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1093 (C.D. Cal. 2017).) Based on this sufficient allegation that Products were not merchantable, and that Plaintiffs were the intended purchasers of the Products, the Court should deny Defendant's motion to dismiss the implied warranty claims.

### H. Plaintiffs' Equitable Claims Are Sufficiently Pleaded

### 1. Plaintiffs have alleged an inadequate legal remedy

Relying on the Ninth Circuit's recent decision in *Sonner v. Premier Nutrition*

-18-

*Corp.*, 971 F.3d 834 (9th Cir. 2020), Unilever argues there is no basis for equitable relief under the CLRA, FAL, and UCL because Plaintiffs have not alleged a lack of adequate remedy at law. Motion, p. 17. In *Sonner*, where plaintiff dismissed her legal damages to assert restitution in the exact same amount in order to secure a bench trial, the facts are easily distinguishable from Plaintiffs' allegations that they can only be made whole by both legal and equitable remedies. *Sonner*, 971 F.3d at 844. Moreover, the basis for Defendant's claim—that Plaintiffs "do not allege an inadequate legal remedy"—is simply that the FAC seeks to certify a class asserting a legal remedy. This is not sufficient, even under *Sonner*. In a case that followed *Sonner*, a Northern District court pointed out, "The mere fact that the FAC requests damages is not sufficient to show that restitution is foreclosed. Instead, the plaintiffs must adequately allege that, under usual principles of equity, their remedies at law would be inadequate to what restitution could provide." *Anderson v. Apple Inc*., No. 3:20-CV-02328-WHO, 2020 WL 6710101, at *8 (N.D. Cal. Nov. 16, 2020).

Another case cited by Defendant, *In Re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020), should also not bear on the Court's decision that Plaintiffs, as outlined in the FAC, do not have an inadequate legal remedy for future harm. That decision lumped its analysis "of the adequacy of such legal remedy as it pertains to all harm (past and future) without differentiation." *IntegrityMessageBoards.com v. Facebook, Inc*., No. 18-CV-05286-PJH, 2020 WL 6544411, at *8 (N.D. Cal. Nov. 6, 2020) (holding that plaintiff's inability to rely on Facebook's future representations justified a claim for injunctive relief because future money damages could not be proven with certainty). At the Motion to Dismiss stage of litigation, there is "an ongoing, prospective nature to [plaintiff's allegations]" and the likelihood that future purchasers will continue to be misled. *Roper v. Big Heart Pet Brands, Inc*., No. 119CV00406DADBAM, 2020 WL 7769819, at *9 (E.D. Cal. Dec. 30, 2020).

Here, Plaintiffs make the necessary allegations that only equitable remedies

could cure some of the harm committed by Defendant. In particular, Plaintiffs ask Defendant to "(a) discontinue the practice of including non-functional slack fill and or obscure product weight labeling; (b) undertake an immediate public information campaign to inform members of the putative Classes as to their prior practices; and (c) to correct any erroneous impression consumers may have derived concerning the amount of product they were purchasing, including without limitation, the placement of corrective advertising and providing written notice to the public." FAC ¶ 34. The requested injunctive relief here would cure future harm in a way that would be impossible to achieve with the legal remedies requested for past harm.

### 2.     Plaintiffs have standing to seek injunctive relief

Defendant next argues that Plaintiffs cannot seek injunctive relief because the FAC fails to allege why Plaintiffs will suffer a repeated injury. Motion, p. 18. This misrepresents both the facts in the FAC and the relevant law. Plaintiffs, even after becoming aware of Defendant's false advertising, can still have standing to seek injunctive relief to enable the Court to enjoin Defendant's false advertising under California's consumer protection laws. *See Spann v. J.C. Penney Corp.*, 2015 WL 1526559, at *12 (C.D. Cal. Mar. 23, 2015); *Koehler v. Litehouse, Inc.*, 2012 WL 6217635 (N.D. Cal. 2012) ("[t]o do otherwise would eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief."). In *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017), the court stated that "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* (citing i.e., *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 527 (N.D. Cal. 2012)); *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JT, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015).

Defendant attempts, unsuccessfully, to distinguish *Davidson*, which is still

the relevant precedent for what Plaintiffs allege in the FAC. In *Davidson*, the Plaintiff alleged that she still wanted to purchase the product at issue, a flushable wipe, and would do so if she could determine that the manufacturer's representations about the product were true. *Davidson*, 873 F.3d 1103, 1116. Here, Plaintiffs sufficiently demonstrate that they are "realistically threatened by a repetition of the violation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006). As with the plaintiff in *Davidson*, Plaintiffs continue to shop at the stores where they purchased the Products, would still purchase the Products if they were able to determine that the representations made by the packaging were an accurate reflection of the product inside.

## I.      Plaintiffs Have Standing To Assert Claims For All Products[1]

Plaintiffs have standing to assert claims for all Degree, Dove, and Axe brand names sold by Unilever, rather than just the particular brands they purchased. The claims under the CLRA, FAL, and UCL are all based upon the same misrepresentation across all brands, rather than any feature particular to one or more brands. "In the Ninth Circuit, there is 'no controlling authority' on whether a plaintiff in a class action has standing to assert claims based on products he did not purchase." *Dennis v. Ralph Lauren Corp.*, No. 16-CV-1056-WQH-BGS, 2017 WL 3732103, at *6 (S.D. Cal. Aug. 29, 2017) (quoting *Morales v. Unilever U.S., Inc.*, No. 13-CV-2213-WBS-EFB, 2014 WL 1389613, at *4 (E.D. Cal. Apr. 9, 2014)). However, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members

---

[1]  Defendant brings this issue under the same 12(b)(6) claims as the rest of the Motion, despite the fact that Article III pertains to the Court's subject matter jurisdiction and therefore is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Cortina v. Goya Foods, Inc.*, No. 14-CV-169-L-NLS, 94 F.Supp.3d 1174, 2015 WL 1411336, at *18 (S.D. Cal. Mar. 19, 2015) (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F.Supp.2d 861, 869 (N.D. Cal. 2012) (where product composition is less important, "cases turn on whether the alleged misrepresentations are sufficiently similar across product lines")).

In a similar case heard in this District, the plaintiff, a Nordstrom Rack shopper, had standing to sue on behalf of purchasers of other Nordstrom Rack items with similar price tags because "the characteristics and format that Plaintiff complains of remain consistent across such tags." *Branca v. Nordstrom, Inc.*, No. 14-CV-2062-MMA-JMA, 2015 WL 10436858, at *5 (S.D. Cal. Oct. 9, 2015). Multiple courts have also found that plaintiffs had standing to sue on behalf of consumers who brought different products. *Dennis v. Ralph Lauren Corp.*, 2017 WL 3732103 (S.D. Cal. Aug. 29, 2017) at *7 (concluding that the plaintiff "has demonstrated sufficient similarities in the Defendants' alleged pricing scheme to avoid dismissal of any claims at this stage of the proceedings."); *Azimpour v. Sears, Roebuck & Co.*", No. 15-CV-2798-JLS-WVG, 2017 WL 1496255, at *5 (S.D. Cal. Apr. 26, 2017) (finding that the "Plaintiff has standing to sue on behalf of purchasers of other Sears items bearing in-store price tags similar to those relied upon by Plaintiff because he is challenging the pricing scheme, not the product."); *Anderson v. Jamba Juice Co.*, 888 F.Supp.2d 1000, 1001 (N.D. Cal. 2012) (finding that although the plaintiff purchased only two of the many flavors of smoothie kits, the plaintiff had standing to bring claims on behalf of purchasers of the other flavors because "the same alleged misrepresentation was on all of the smoothie kit[s] regardless of flavor; all smoothie kits [were] labeled 'All Natural,' and all smoothie kits contain[ed] allegedly non-natural ingredients."); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (concluding that the plaintiffs had standing to sue based on flavors of ice cream they did not purchase

because many of the contested ingredients were the same across all of the ice creams at issue and their labels were nearly identical)

The *Branca* court noted that "all of the products are marketed to the same consumers, Nordstrom Rack shoppers. Thus, product composition is of little importance and the similarity amongst the purported misrepresentations is most important[.]" *Id.* Because the plaintiff was challenging the "same basic mislabeling practice" regardless of the type of product, the court found that the plaintiff had standing to sue on behalf of purchasers of other Nordstrom Rack items. *Id.* Here, Defendant argues Plaintiffs do not have standing to bring claims on behalf of a broad range of consumers who purchased different products, at different prices, and accompanied by different signage. However, the cases cited by Defendant in support of this proposition involve claims where the misrepresentation or dispute revolve around the product itself, which is not at issue here. Just as in *Branca*, the same basic mislabeling practice is common to all deodorant brands under the Degree, Dove, and Axe brands names, not just the specific sub-brands purchased.

**J.      Plaintiffs Have Adequately Pleaded Unjust Enrichment Under California Law**

Defendant erroneously concludes that Plaintiffs cannot bring an independent cause of action for unjust enrichment under California law. However, the Ninth Circuit has found that where a plaintiff has pleaded she was "enticed to purchase [defendant's] products through 'false and misleading' labeling, and that [defendant] was 'unjustly enriched' as a result. Plaintiff may properly plead a cause of action for unjust enrichment." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015) ("Common law principles of restitution require a party to return a benefit [obtained through mistake, fraud, coercion, or request] when the retention of such benefit would unjustly enrich the recipient . . . ."). When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 166 Cal.Rptr.3d 864, 872 (2014)).

Here, Plaintiffs have properly pleaded an alternative claim of unjust enrichment. FAC. ¶¶ 73-80. Moreover, Rule 8 permits Plaintiffs to plead more than one statement of a claim alternatively or hypothetically, either in a single count or in separate ones (pleadings may contain "a demand for the relief sought, which may include relief in the alternative or different types of relief." F.R.C.P. 8(a)(3). Thus, Plaintiffs' claim for unjust enrichment is proper, under California law.

## K.    Claims Brought By Plaintiffs Lanier and Stevens Are Not Time-Barred

Plaintiffs Lanier and Stevens have satisfied their obligation to put Defendant on notice of the claims against it "during the class period," which is defined in the FAC as a period within the applicable statute of limitations for all causes of action. *See Jones v. ConAgra Foods*, Inc. 912 F. Supp. 2d 889, 902 (N.D. Cal. 2012) ("Plaintiffs' allegations that they bought the products in California since April 2008 are sufficient to put Defendant on notice of the claims against it."). While Defendant is correct on the three-year statute for Plaintiffs' CLRA, FAL, negligent representation, and fraud claims, their request for dismissal on this basis should be denied at this stage of the litigation. Plaintiffs have asserted that they purchased Defendant's products within the statutory period. *See* FAC ¶¶ 12-13. In addition, the classes and subclasses are defined to include all persons who made retail purchases of the applicable products "during the applicable limitations period." FAC ¶ 26. However, Plaintiffs Lanier and Stevens have neglected to include when they discovered the fraud took place, which occurred after their final purchases. However, they do allege that they only made the discovery "after some time of use" (FAC ¶ 34), which, because they made purchases within a month or two of the statutory period, should not disqualify them from bringing this action. If allowed to amend the complaint, they will properly allege when discovery of the fraud occurred. *See Broberg v. The Guardian Life Ins. Co. of America* (2009) 171 Cal.App.4th 912 ("The limitations period begins to run only when the aggrieved party discovers 'the facts constituting the fraud'); *April Enterprises, Inc. v. KTTV*

-24-

1   (1983) 147 Cal.App.3d 805, 832 ("[The discovery rule] permits delayed accrual
2   until a plaintiff knew or should have known of the wrongful conduct at issue").

3       Furthermore, to the extent that Defendant is asserting that Plaintiffs Lanier
4   and Stevens are not appropriate class representatives because they did not purchase
5   products within the statutory period, that argument is not appropriate for resolution
6   on a motion to dismiss. *See Amini v. AUS Marketing Research Sys. Inc.*, 2015 WL
7   12912309 (C.D. Cal. Dec. 29, 2016), * 7 ("Whether Plaintiff is an adequate
8   representative for the class is also another question for another day"), citing
9   *Lumbermens Mut. Cas. Co. v. Rhodes*, 403 F.2d 2, 6 (10th Cir. 1968).

10  ## V.   LEAVE TO AMEND

11      If the Court determines that the complaint should be dismissed, it must then
12  decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of
13  Civil Procedure, leave to amend "should be freely granted when justice so requires,"
14  bearing in mind that "the underlying purpose of Rule 15...[is] to facilitate decision
15  on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203
16  F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).

17  ## VI.   CONCLUSION

18      Plaintiffs respectfully request that the Court deny Defendant's Motion in its
19  entirety. To the extent that the Court finds that any of Plaintiffs' allegations are
20  defective, Plaintiffs respectfully request leave to amend under Fed. R. Civ. P. 15.

21                          Respectfully submitted,

22

23  DATED:   February 12, 2021        **MARLIN & SALTZMAN, LLP**

24                          By:   s/ Joel M. Gordon
25                              Stanley D. Saltzman, Esq.
                                Joel M. Gordon, Esq.
26                              Attorneys for Plaintiffs

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS