UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE KRAUSE-PETTAI, SCOTT GRIMM, STEVE TABU LANIER, CHRISTY STEVENS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER UNITED STATES, INC., a corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 20cv1672 DMS (BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

This case comes before the Court on Defendant Unilever United States, Inc.'s motion to dismiss Plaintiffs' First Amended Complaint. Plaintiffs filed an opposition to the motion, and Defendant filed a reply brief. For the reasons set out below, the motion is granted in part and denied in part.

///
///
///

# I.

# BACKGROUND

Plaintiffs Nicole Krause-Pettai, Scott Grimm, Steve Tabu Lanier and Christy Stevens are consumers who purchased a variety of products manufactured by Defendant Unilever United States, Inc. Plaintiff Krause-Pettai purchased Dove "Go Fresh" stick anti-perspirant and deodorant from various retailers throughout San Diego County, her most recent purchase being from a Walmart store in September 2017. (First Am. Compl. ("FAC") ¶11.) Plaintiff Grimm purchased Men's Degree Motion Sense "Everest" and "Sport Defense" stick anti-perspirant and deodorant from various retailers in Orange County, his most recent purchase being from Costco in August 2017. (*Id.* ¶12.) Plaintiff Lanier purchased Axe Antiperspirant Stick for Men "Dark Temptation" from various retailers in San Diego County, his most recent purchase being from Walmart in mid-June 2017. (*Id.* ¶13.) Plaintiff Stevens purchased Degree Women's Antiperspirant Deodorant Stick "Shower Clean" from various retailers in Sacramento County, her most recent purchase being from Walgreens in July 2017. (*Id.* ¶14.) Plaintiffs allege they purchased these products based on the size of the packaging. (*Id.* ¶¶11-14.) Specifically, they allege that because of the size of the packaging, it appeared they were "getting more product for a similar price as compared to other brands of stick deodorant which were in smaller packages[.]" (*Id.*) Plaintiffs allege that after they purchased these products, they discovered a significant amount of empty space on both the top and bottom of the products, *i.e.*, "nonfunctional slack fill." (*Id.* ¶26.)[1] Plaintiffs allege this "slack fill" was not apparent when they examined the products prior to purchase because the packaging was opaque. Plaintiffs allege that before making their purchases, they examined other similar products

---

[1] "In California, slack fill is the 'difference between the actual capacity of a container and the volume of product contained therein.'" *Martinez-Leander v. Wellnx Life Scis., Inc.*, No. CV 16-08220 SJO (EX), 2017 WL 2616918, at *7 (C.D. Cal. Mar. 6, 2017) (quoting Cal. Bus. & Prof. Code § 12606(b)).

2

with non-opaque packaging and were able to see that the packages were completely full. Plaintiffs believed Defendant's products were similarly full, and because the packaging was larger, Plaintiffs believed they were getting more product for a similar price by purchasing Defendant's products. (*Id.* ¶¶26-34.)

As a result of Plaintiffs' experiences with Defendant's products, they filed the present case. Plaintiffs seek to represent a class of California consumers who purchased Defendant's products within the statutory limitations period on the following claims: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), (2) violation of California's False Advertising Law ("FAL"), (3) violation of California's Unfair Competition Law ("UCL"), (4) unjust enrichment, (5) breach of implied warranty of merchantability, (6) negligent misrepresentation, and (7) fraud. In response to the FAC, Defendant filed the present motion.

## II.

## DISCUSSION

Defendant raises a number of arguments in support of its motion to dismiss. The Court addresses those arguments below.

**A.     Legal Standard**

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court established a more stringent standard of review for 12(b)(6) motions. To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).

In *Iqbal*, the Court began this task "by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680. It then considered "the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

### B.  CLRA, FAL and UCL Claims

Defendant's first argument in support of its motion to dismiss is that Plaintiffs' claims under the CLRA, FAL and UCL must be dismissed because the products' packaging and labels accurately disclose the net weight of the products. Plaintiffs respond that the disclosure of net weight, by itself, is insufficient to warrant dismissal of these claims.

Each side cites a number of cases in support of its position. Defendant focuses on *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016). In that case, the plaintiff brought claims under the CLRA, FAL and UCL against a manufacturer of high-end lip balm products. *Id.* at 961-62. Like the products at issue here, the Fresh products' packaging and labels accurately disclosed the net weight of the product. *Id.* at 962. However, the plaintiff alleged the "'vastly oversized tubes and boxes' create[d] the misleading impression that each unit has a larger quantity of lip product than it actually contains.'" *Id.* In response, the defendant filed a motion to dismiss, which the district court granted. On appeal, the Ninth Circuit affirmed that decision for a variety of reasons, one of which was that no reasonable consumer was likely to be deceived by the products' labels, designs or packaging because "an accurate net weight label is affixed to every Sugar tube and its accompanying cardboard box." *Id.* at 967. The court also found that "elaborate packaging and the weighty feel of the tube is commonplace and even expected by a significant portion of Fresh's 'targeted consumers.'" *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Based on those facts, and "viewed in the context of the high-end cosmetics market," the court found "no reasonable consumer expects the weight or overall size of the packaging to reflect directly the quantity of product contained therein." *Id.*

/ / /

Plaintiffs do not address *Ebner* directly, but contrary to Defendant's assertion, it is not "directly on point" with the facts alleged in this case. (Mem. of P. & A. in Supp. of Mot. at 6.) Specifically, *Ebner* was not a true "slack fill" case. Rather, the plaintiff in *Ebner* alleged "the stated product quantity is false and misleading because only a portion of that product is reasonably accessible to the consumer." 838 F.3d at 962. Indeed, the *Ebner* court even held that "the lip product falling below the stop device does not meet the definition of actionable slack fill." *Id.* at 967. Here, by contrast, Plaintiffs' claims do not rest on any alleged inaccessibility of the product. Instead, Plaintiffs contend that "nonfunctional slack-fill represent[s] about 40% of the size of the packaging." (FAC ¶29.)

Although *Ebner* was not a true "slack fill" case, several district courts in the Ninth Circuit have relied on that case to dismiss "slack fill" claims. *See Buso v. SCH Food Companies, Inc.*, 445 F.Supp.3d 1033 (S.D. Cal. 2020); *Kennard v. Lamb Weston Holdings, Inc.*, No. 18-cv-04665-YGR, 2019 WL 1586022 (N.D. Cal. Apr. 12, 2019); *Reider v. Immaculate Baking Co.*, No. 8:18-cv-01085-JLS-AS, 2018 WL 6930890 (C.D. Cal. Nov. 8, 2018); *Macaspac v. Henkel Corp.*, No. 3:17-cv-01755-H-BLM, 2018 WL 2539595 (S.D. Cal. June 4, 2018); *Bush v. Mondelez Int'l, Inc.*, No. 16-cv-02460-RS, 2016 WL 5886886 (N.D. Cal. Oct. 7, 2016). Defendant cites to many of these cases in support of its motion to dismiss, but as Plaintiffs point out, each of those cases is distinguishable from the present case. In *Bush*, *Reider*, *Kennard*, and *Buso*, the packaging disclosed product measurements other than just net weight. *See Bush*, 2016 WL 5886886, at *3 (relying on label that disclosed "the number of cookies or crackers per container."); *Reider*, 2018 WL 6930890, at *2 (relying on "a conspicuous yield chart listing the number of certain size cakes that can be made from one box of mix."); *Kennard*, 2019 WL 1586022, at *5 (relying on packaging that disclosed "the number of fries per serving, and the approximate number of servings per container."); *Buso*, 445 F.Supp.3d at 1038 (relying on "rough estimate of cornbread that can be made from the product contained within the box.") And in *Macaspac*, the packaging was partially transparent, which allowed consumers to see the contents inside the packaging. 2018 WL 2539595, at *6.

Those cases being distinguishable, Plaintiffs urge the Court to follow a different line of cases that have declined to apply *Ebner* to "slack fill" claims. *See Clevenger v. Welch Foods, Inc.*, ___ F.Supp.3d ___, 2020 WL 8617388 (Nov. 18, 2020); *Padilla v. Whitewave Foods Co.*, No. LA CV18-09327 JAK (JCx), 2019 WL 4640399 (C.D. Cal. July 26, 2019); *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCx), 2018 WL 6714323 (Oct. 17, 2018); *Escobar v. Just Born Inc.*, No. 17-01826 BRO (PJWx), 2017 WL 5125740 (C.D. Cal. June 12, 2017). Each of those cases leaned on the Ninth Circuit's admonition that it will be a "rare situation" where granting a motion to dismiss is appropriate based on the reasonable consumer standard. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). Certain of the cases relied on the opaque nature of the packaging. *See Clevenger*, 2020 WL 8617388 (fruit snack boxes); *Padilla*, 2019 WL 4640399 (protein powder containers); *Escobar*, 2017 WL 5125740 (candy boxes). And two of those cases relied on the absence of any other indication of the measurement of the product on the packaging or product labels. *See Clevenger*, 2020 WL 8617388; *Escobar*, 2017 WL 5125740. None of these cases, however, is on all fours with the facts of this case.

In this case, Plaintiffs allege the products at issue are deodorant sticks that are packaged in opaque containers. All of the containers list the net weight of the product contained therein, and Plaintiffs allege all of the products include "slack fill." Like the products at issue in most of the other cases, consumers are able to visually and manually inspect the packaging of the products at issue here. Thus, they are able to read the net weight of the product inside the packaging. However, as the *Escobar* court noted, "a reasonable consumer is not necessarily aware of a product's weight or volume and how that weight or volume correlates to the product's size." 2017 WL 5125740, at *9. Unlike some of the cases set out above, in which the products included additional measurements such as the number of cookies or the amount of cake or bread that can be made with the product, the net weight alone provides little, if any meaningful information to the consumer about the actual size or amount of deodorant inside the container. Also, unlike with a container of cookies or cake mix, which makes some noise upon handling, the consumer

is unlikely to obtain any useful information about the amount of deodorant inside the container from manually handling or shaking the product.

Given the specific facts alleged in this case, namely, the opaque nature of the packaging, the limited value of the net weight listing, and the lack of other available indicators of the amount of deodorant in the packaging, the consumer is left to rely primarily on the size of the container as representative of the amount of deodorant inside the package. Although the target consumer in the high-end cosmetics market may not expect the "overall size of the packaging to reflect directly the quantity of product contained therein[,]" *Ebner*, 838 F.3d at 967, it is not clear to this Court that the target consumer of everyday deodorant products would have that same expectation. On the contrary, a reasonable consumer of everyday deodorant products is more likely to expect that the deodorant inside the container will correlate with the space between the plunger on the bottom of the container and the opening on the top, and that the plunger will be as near to the bottom as possible, not an inch above, as Plaintiffs allege. (FAC ¶29.) Based on the allegations in this case, the context of the everyday deodorant market, and the case law discussed above, this Court cannot say this case presents the "rare situation" where it would be appropriate to grant a motion to dismiss these claims based on the reasonable consumer standard.

Failing dismissal of these claims as a whole, Defendant argues the Court should dismiss Plaintiffs' request for equitable relief on these claims because Plaintiffs have failed to allege they have no adequate remedy at law. In support of this argument, Defendant relies primarily on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). However, as Plaintiffs point out, the present case is factually distinguishable from *Sonner*. There, the plaintiff sought leave to dismiss her CLRA claim and add a claim for restitution less than two months before the trial. *Id.* at 838. The court found the purpose of that strategy was "to request that the district court judge award the class $32,000,000 as restitution, rather than having to persuade a jury to award this amount as damages." *Id.* None of those facts are present here. Furthermore, there is case law contrary to Defendant's

position. *See Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-05452-JST, 2018 WL 2267448, at *6 (N.D. Cal. May 17, 2018) (declining to dismiss claims because plaintiff could pursue alternative remedies at pleading stage); *Spirtos v. Allstate Inc.*, Co., No. CV 02-8798-RGK AJWX, 2003 WL 25900368, at *4 (C.D. Cal. Jan. 10, 2003) (stating plaintiffs' "continual injuries, if proven to exist," may warrant injunction). Accordingly, the Court declines to dismiss Plaintiffs' request for equitable relief on these claims.

**C.   Preemption**

Defendant's next argument is that, to the extent Plaintiffs are seeking a change to the net weight labeling on the products, that claim is preempted by California's Fair Packaging and Labeling Act and the Federal Food Drug and Cosmetic Act. Although the FAC seeks injunctive relief in the form of an order requiring Defendant to "provide clear labeling of the products' net weight[,]" (FAC at 25), Plaintiffs respond that they "are not bringing this action based on mislabeling. They are bringing this action based on the misrepresentations of its packaging." (Mem. of P. & A. in Opp'n to Mot. at 10.) (*See also id.* at 11 (stating FAC "does not seek to impose liability on Defendant for its labeling. Rather, the FAC attacks the Products' misleading packaging, which fraudulently promises more of the products than is delivered.")) Based on Plaintiffs' response, Defendant's preemption argument appears to be moot.[2]

**D.   "Nonfunctional" Slack Fill**

Next, Defendant argues Plaintiffs' allegations about the nonfunctional nature of the "slack fill" are conclusory and insufficient. In support of this argument, Defendant cites *Bush*, 2016 WL 5886886, at *4, and *Martinez-Leander*, 2017 WL 2616918. In each of those cases, the court found the plaintiff's allegations regarding non-functional slack fill

---

[2] To the extent Defendant argues Plaintiffs' packaging claim is preempted, (*see* Reply at 4), that argument is different from the argument Defendant raised in its motion, and thus, the Court does not consider it here. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.")

were insufficient. However, Plaintiffs here have pleaded more facts than the plaintiffs in either of those cases. In *Bush*, the plaintiff merely recited "the six circumstances in which slack-fill is functional and not misleading, under 21 C.F.R. § 100.100(a)(1)-(6)," and then "allege[d] tersely that 'none of these circumstances apply here.'" 2016 WL 5886886, at *4. The plaintiff's allegations in *Martinez-Leander* were similarly vague and conclusory. 2017 WL 2616918, at *7 (stating plaintiff merely recited "the language of the statute and its fifteen exceptions," and then "conclude[d] that the Defendants did not meet any of these exceptions, and "lacked any lawful justification" for the empty space.")

Here, by contrast, Plaintiffs allege Plaintiff Grimm, after discovering the "slack fill" in Defendant's products, purchased two competitors products, and discovered "there was no slack-fill at the bottoms of the packages demonstrating to him there was no functional reason to have empty space at the bottom of Defendant's packaging[.]" (FAC ¶31.) Similar allegations have been found sufficient to state a claim for non-functional "slack fill." *See Clevenger*, 2020 WL 8617388, at *5 (alleging defendant's products were "underfilled compared to other varieties of Defendants' Regular Fruit Snacks that come in same-sized boxes."); *Escobar*, 2017 WL 5125740, at *12 (noting "Plaintiff also juxtaposes Defendant's Products against Boston Baked Beans packaging provide a factual counterexample to Defendant's claim that any one of the above functionality factors applies.") Thus, the Court denies Defendant's motion to dismiss Plaintiffs' claims based on their allegations regarding the nonfunctional nature of the "slack fill."

E.   **Federal Rule of Civil Procedure 9(b)**

Next, Defendant argues Plaintiffs' fraud-based claims must be dismissed because they do not comply with Rule 9(b). Specifically, Defendant asserts Plaintiffs have failed to plead with the requisite specificity (1) what they purchased, (2) when they purchased, and (3) that they relied on the product packaging in making their purchasing decisions.[3]

---

[3] Defendant also reiterates its position that Plaintiffs' "nonfunctional" slack-fill allegations are deficient, and contends Plaintiffs have failed to allege sufficient facts to support their

9

The FAC refutes Defendant's argument that Plaintiffs have failed to allege the necessary specifics. As to Plaintiff Krause-Pettai, Plaintiffs allege: "On multiple times during the class period, [she] purchased, for her personal use, Dove 'Go Fresh' stick antiperspirant & deodorant from various retailers in San Diego County." (FAC ¶11.) As to Plaintiff Grimm, "[a] few times during the class period, [he] purchased, for his personal use, Men Degree Motion Sense 'Everest' and 'Sport Defense' stick antiperspirant & deodorant from various retailers in Orange County." (*Id.* ¶12.) "Several times during the class period, Steve Tabu Lanier purchased, for his personal use, Axe Antiperspirant Stick for Men, 'Dark Temptation' from various retailers in San Diego County." (*Id.* ¶13.) And "[d]uring the class period, on several occasions Christy Stevens purchased, for her personal use, Degree Women Antiperspirant Deodorant Stick 'Shower Clean' from various retailers in Sacramento County." (*Id.* ¶14.) Plaintiffs also allege that they all "believed that the size of the packaging of Defendant's product was full of the deodorant and thus represented the quantity or volume of the product they were purchasing." (*Id.* ¶32.) They go on to allege: "Because of the larger packaging with the Dove Degree and Axe products, Plaintiffs concluded that they were getting more product for a similar price as compared to the competitors' products, and it was this larger packaging, which induced them to purchase the Defendant's products versus the competitors." (*Id.* ¶33.) These allegations are sufficient to satisfy Rule 9(b), and thus the Court denies Defendant's motion to dismiss based on that Rule.

///

---

request for punitive damages. The Court addressed the former argument above, and will not address it again here. As for the latter argument on punitive damages, those allegations need not satisfy Rule 9(b). To the extent Defendant claims Plaintiffs' allegations are nonetheless deficient, the Court disagrees. (*See* FAC ¶4) (alleging Defendant knew it was misleading customers with its packaging, "and did it purposefully to mislead in order to gain a larger market share for the Products.") Thus, the Court denies Defendant's request to dismiss Plaintiffs' request for punitive damages.

### F. Economic Loss Rule

Next, Defendant argues Plaintiffs' fraud claim is barred by the economic loss rule. It is unclear, however, whether this rule applies to claims of fraud. *See Kamal v. Eden Creamery, LLC*, No. 18-CV-01298-BAS-AGS, 2019 WL 2617041, at *12 (S.D. Cal. June 26, 2019) (denying motion to dismiss fraud claim based on economic loss rule); *Takano v. Procter & Gamble Co.*, No. 2:17-CV-00385-TLN-AC, 2018 WL 5304817, at *11 (E.D. Cal. Oct. 24, 2018) (same); *Arabian v. Organic Candy Factory*, No. 217CV05410ODWPLA, 2018 WL 1406608, at *8 (C.D. Cal. Mar. 19, 2018) (same); *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2017 WL 3838453, at *9 (N.D. Cal. Sept. 1, 2017) (citing *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 949, 991 (2004)) ("claims of fraud and intentional misrepresentation that are independent of a breach of contract are not subject to the economic loss rule.")  In light of these cases, the Court declines to dismiss Plaintiffs' fraud claim based on the economic loss rule.

### G. Breach of Implied Warranty

Defendant's next argument is addressed to Plaintiffs' claim for breach of the implied warranty of merchantability. Defendant argues this claim is barred by a lack of privity between Plaintiffs and Defendant, and that the claim should be dismissed because Plaintiffs have failed to allege the Products are not fit for their ordinary purpose.

In response to the privity argument, Plaintiffs assert there is an exception for third-party beneficiaries of the manufacturer's warranty. There is case law supporting Plaintiffs' position. *See Shay v. Apple Inc.*, ___ F.Supp.3d ___, No. 20CV1629-GPC(BLM), 2021 WL 75690, at *8 (S.D. Cal. Jan. 8, 2021) (quoting *Kearney v. Hyundai Motor Am.*, No. SACV09-1298-JST MLGX, 2010 WL 8251077, at *10 (C.D. Cal. Dec. 17, 2010)) (There is an "exception to the privity requirement for a breach of implied warranty of merchantability claim if a plaintiff can show that he was a third party beneficiary of a contract between the defendant and a third party.")  However, the Ninth Circuit, relying on California law, has not recognized a third-party beneficiary exception to the privity requirement. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008)

(stating California courts "have painstakingly established the scope of the privity requirement …, and a federal court sitting in diversity is not free to create new exceptions to it.")  Absent binding authority establishing a third-party beneficiary exception to the privity requirement, the Court grants Defendant's motion to dismiss this claim.[4]

**H.    Standing**

Next, Defendant attacks Plaintiffs' standing to pursue injunctive relief and to bring claims based on products they did not purchase.

1.    Injunctive Relief

The controlling law on Defendant's first argument about injunctive relief is *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), a case concerning wipes labeled as flushable that were, in fact, not flushable.  *Id.* at 962.  There, the court held the plaintiff had standing to seek injunctive relief because "[a] consumer's inability to rely on a representation made on a package, even if the consumer knows or believes the same representation was false in the past, is an ongoing injury that may justify an order barring the false advertising."  *Id.* at 961.  Although the court noted that "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future[,]" *id.*, the court also recognized that the threat of future harm may take other forms, such as "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to[,]" *id.* at 969–70, or "the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false

/ / /

---

[4] As for Defendant's other argument that Plaintiffs have failed to allege the products are not fit for their ordinary purpose, the Court disagrees with Defendant that Plaintiffs must so allege.  Rather, the allegations in the FAC are sufficient.  *See Hendricks v. StarKist Co.*, 30 F.Supp.3d 917, 933 (N.D. Cal. 2014) (finding complaint "sufficiently sets forth a claim that the Products here were not adequately packaged, consistent with an implied promise that they were adequately filled with tuna.")

advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 970.

Defendant acknowledges *Davidson*, but suggests this case is distinguishable because "Plaintiffs' knowledge of the Products' net weight disclosure precludes any plausible argument that they will suffer confusion in the future." (Mem. of P. & A. in Supp. of Mot. at 18.)  This argument, however, ignores the holding and reasoning of *Davidson*. Nevertheless, this case is distinguishable from *Davidson* in another key respect:  Unlike in *Davidson*, Plaintiffs here did not include allegations regarding future harm in their FAC. *Compare* FAC here *with* FAC in *Davidson*, 889 F.3d at 970-71 (where plaintiff "alleged that she 'continues to desire to purchase wipes that are suitable for disposal in a household toilet'; 'would purchase truly flushable wipes manufactured by [Kimberly–Clark] if it were possible'; 'regularly visits stores ... where [Kimberly–Clark's] 'flushable' wipes are sold'; and is continually presented with Kimberly–Clark's flushable wipes packaging but has "no way of determining whether the representation 'flushable' is in fact true.'")  For this reason, Defendant is entitled to dismissal of Plaintiffs' request for injunctive relief.

### 2. Claims Based on Unpurchased Products

Defendant also contends Plaintiffs lack standing to assert claims based on products they did not purchase.  Plaintiffs respond that they have standing to assert these claims because "the same basic mislabeling practice is common to all deodorant brands under the Degree, Dove, and Axe brand names, not just the specific sub-brands purchased." (Mem. of P. & A. in Opp'n to Mot. at 23.)

There is case law supporting both parties' positions.  *See, e.g.*, *Herskowitz v. Apple Inc.*, 940 F.Supp.2d 1131, 1150 (N.D. Cal. 2013) (holding the plaintiff lacked standing to assert claims on behalf of customers who bought different products); *Gordon v. Tootsie Roll Industries, Inc.*, No. 17-2664, 2017 WL 4786090, at *2–3 (C.D. Cal. Oct. 4, 2017) (finding the plaintiff had standing to bring claims relating to candy he did not purchase because the candy was substantially similar to the candy he did purchase).  However, even applying their case law, Plaintiffs have failed to meet the pleading requirements to show

they have standing to assert claims based on products they did not purchase. *Compare* FAC here *with Figy v. Frito-Lay N. Am., Inc.*, 67 F.Supp.3d 1075, 1084 (N.D. Cal. 2014) (denying motion to dismiss because plaintiff "adequately pleaded substantial similarity"); *Brazil v. Dole Food Co., Inc.*, No. 12-CV-01831-LHK, 2013 WL 5312418, at *9 (N.D. Cal. Sept. 23, 2013) (same); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (finding "Plaintiffs have alleged sufficient similarity between the products they did purchase and those that they did not"). Accordingly, the Court grants Defendant's request to dismiss Plaintiffs' claims to the extent they rely on products Plaintiffs did not purchase.

## I.   Unjust Enrichment

Defendant's penultimate argument is that Plaintiffs' claim for unjust enrichment should be dismissed because that is not a stand-alone claim under California law. This Court agrees with that argument. *See McBride v. Boughten*, 123 Cal. App. 4th 379, 387 (2004) (quoting *Melchior v. New Line Products, Inc.*, 106 Cal. App. 4th 779, 793 (2003)) (stating unjust enrichment is a "general principle underlying various legal doctrines and remedies;" it is not an independent cause of action). Accordingly, the Court grants the motion to dismiss this claim.

## J.   Statute of Limitations

Defendant's final argument is that Plaintiffs Lanier and Stevens's claims under the CLRA and FAL, and their claims for negligent misrepresentation and fraud, should be dismissed as time-barred. Specifically, Defendant argues these Plaintiffs last purchased Products in June and July of 2017, which is outside the three-year statutory limitations period.[5] Plaintiffs appear to concede that the allegations as to these Plaintiffs are insufficient, and that they must allege facts supporting the discovery rule to bring these claims within the statute of limitations. (See Mem. of P. & A. in Opp'n to Mot. at 24, lines

---

[5] Based on the filing of the Complaint on August 26, 2020, the claims at issue would be time-barred absent tolling.

20-21 ("… Plaintiffs Lanier and Stevens have neglected to include when they discovered the fraud took place, which occurred after the final purchases.") Given Plaintiffs' response, the Court grants Defendant's motion to dismiss these claims.

## III.

## CONCLUSION AND ORDER

For the reasons discussed above, Defendant's motion to dismiss is granted in part and denied in part. Specifically, the Court grants the motion to dismiss Plaintiffs' requests for injunctive relief and Plaintiffs' claims based on products they did not purchase. The Court also grants Defendant's motion to dismiss Plaintiffs' claims for unjust enrichment and breach of implied warranty, and Plaintiffs' Lanier and Stevens's claims under the CLRA and FAL, as well as their claims for negligent misrepresentation and fraud. In all other respects, Defendant's motion is denied. Pursuant to Plaintiffs' request, the Court grants Plaintiffs leave to file a Second Amended Complaint that cures the pleading deficiencies set out above. Plaintiffs are cautioned that if their Second Amended Complaint does not cure these deficiencies, their claims will be dismissed with prejudice and without leave to amend. Plaintiffs shall file their Second Amended Complaint on or before **May 7, 2021**. Because at least some claims will survive any future motion to dismiss, the Court refers the parties to the Magistrate Judge for an Early Neutral Evaluation conference, at which time all dates, including a trial date, shall be set.

**IT IS SO ORDERED**.

Dated: April 23, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court