1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MARLIN & SALTZMAN, LLP**
Stanley D. Saltzman, Esq. (SBN 90058)
Joel M. Gordon, Esq. (SBN 280721)
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone:   (818) 991-8080
Facsimile:    (818) 991-8081
ssaltzman@marlinsaltzman.com
jgordon@marlinsaltzman.com

*Attorneys for Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE KRAUSE-PETTAI, KEVIN BOLDEN, ERROL CARREON, CHRISTY STEVENS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER UNITED STATES, INC., a corporation; and DOES 1-10, inclusive,<br><br>Defendants. | **CASE NO.  3:20-cv-01672-LL-BLM**<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>(*Filed concurrently with Declarations of Stanley D. Saltzman, Joel M. Gordon, Nicole Krause-Pettai, Kevin Bolden, Errol Carreon, and Christy Botto*)<br><br>Judge:    Hon. Linda Lopez<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>[Action Filed: August 26, 2020] |

**TO THE HONORABLE COURT, ALL PARTIES & THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on a date to be determined, if any, by the Court, the matter may be heard before the Honorable Judge Linda Lopez, in Courtroom 13A of the United States District Court, Southern District of California, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs Nicole Krause-Pettai, Kevin Bolden, Errol Carreon, and Christy Botto (formerly Stevens) will and hereby do move for an order:

1. Certifying this matter as a class action;

2. Appointing the above-named Plaintiffs as class representatives;

3. Appointing Marlin & Saltzman, LLP as Class Counsel

This motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities, and the accompanying Declarations in support of Class Certification by Joel M. Gordon, Stanley D. Saltzman, and the Plaintiffs. This Motion is also based on the pleadings and papers on file in this action and all other matters which the Court may properly consider.

**DATED**:  September 30, 2022            **MARLIN & SALTZMAN, LLP**


By:  _s/ Joel M. Gordon_____
          Stanley D. Saltzman, Esq.
          Joel M. Gordon, Esq.

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  STATEMENT OF FACTS ..................................................................................3

    A.   Parties ........................................................................................................3

    B.   Class Definition .......................................................................................5

    C.   Plaintiffs' Claims .....................................................................................5

    D.   Packaging At Issue ..................................................................................7

    E.   Sales Of The Products During Class Period .........................................8

    F.   Procedural History ...................................................................................8

III. LEGAL STANDARD .........................................................................................9

IV.  ARGUMENT .....................................................................................................10

    A.   The Requirements of Rule 23(A) Are Satisfied ................................10

        1.   There Is No Dispute That The Class Is Sufficiently Numerous ......................................................................................10

        2.   There Are Common Questions of Fact and Law ..........................10

        3.   Plaintiffs' Claims Are Typical of the Class ................................14

        4.   Plaintiffs and Proposed Class Counsel Are Adequate Representatives ............................................................................15

    B.   The Requirements of Rule 23 (B)(3) Are Satisfied ...........................16

        1.   Common Questions Are Well-Established and Predominate ..................................................................................16

            a.   Common Legal and Factual Issues Predominate Plaintiff's UCL and FAL Claims. ...............18

            b.   Common Legal and Factual Issues Predominate Plaintiff's CLRA Claim ............................19

            c.   Monetary Relief Can Be Calculated on a Class-Wide Basis. ..................................................21

        2.   A Class Action Is Superior to Other Methods of Adjudication. ................................................................................22

    C.   The Requirements of Rule 23(B)(2) Are Satisfied .............................23

V.   CONCLUSION .................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alcantar v. Hobart Serv.*,
   800 F.3d 1047 (9th Cir. 2015) ...................................................................11

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................9, 16

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) ...................................................................14

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ...................................................................19

*Brazil v. Dole Packaged Foods, LLC*,
   2014 WL 2466559 (N.D. Cal. 2014)........................................................24

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017)...........................................................22, 23

*Broomfield v. Craft Brew Alliance, Inc.*,
   2018 WL 4952519 (N.D. Cal. 2018).........................................................12

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011) ..............................................................14

*Chavez v. Blue Sky Natural Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) ..............................................................21

*Clay v. CytoSport, Inc.*,
   2018 WL 4283032 (S.D. Cal. 2018).........................................................23

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) .............................................................................21

*Cortez v. Purolator*,
   23 Cal.4th 163 (2000)...............................................................................21

*Datta v. Asset Recovery Sols., LLC*,
   2016 WL 1070666 (N.D. Cal. 2016).........................................................9

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018).....................................................................24

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016)..............................................................18, 20

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974).................................................................................9

*Gartin v. S&M NuTec, LLC*,
   245 F.R.D. 429 (C.D. Cal. 2007) ............................................................................16

*Hanlon v. Chrysler Corporation*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................... passim

*Hanon v. Dataprods. Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...........................................................................9, 10

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ...........................................................................9, 10

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2018 WL 6300479 (S.D. Cal. 2018) ........................................................................11

*In re Abbott Laboratories Norvir Antitrust Litig.*,
   2007 WL 1689899 (N.D. Cal. 2007) .......................................................................18

*In re Cathode Ray Tube Antitrust Litig.*,
   2013 WL 5391159 (N.D. Cal. 2013) .......................................................................21

*In re ConAgra Foods, Inc.*,
   302 F.R.D. 537 (C.D. Cal. 2014) ....................................................................22, 23

*In re Ferrero Litig.*,
   278 F.R.D. 552 (S.D. Cal. 2011) ...........................................................................18

*In re Outlaw Lab'ys, LP Litig.*,
   2020 WL 1083403 (S.D. Cal. 2020) .......................................................................23

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   292 F. Supp. 3d 14 (D.D.C. 2017) ........................................................................15

*In re Steroid Hormone Product Cases*,
   181 Cal. App. 4th 145 (2010) ...............................................................................20

*In re Tobacco II Cases*,
   46 Cal.4th 298 (2009) ..................................................................... 12, 18, 20, 24

*In re Vitamins Antitrust Litig.*,
   209 F.R.D. 251 (D.D.C. 2002) ...............................................................................14

*In re: Lenovo Adware Litig.*,
   2016 WL 6277245 (N.D. Cal. 2016) .......................................................................17

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) .................................................................. 9, 11, 23

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003) .........................................................................................21

*Lavie v. Procter & Gamble Co.,*
   105 Cal. App. 4th 496 (2003) ...................................................... 18, 19, 20

*Lewis v. Robinson Ford Sales, Inc.,*
   156 Cal. App. 4th 359 (2007) ..............................................................12

*Leyva v. Medline Industries, Inc.,*
   716 F.3d 510 (9th Cir. 2013) ...............................................................21

*Linder v. Thrifty Oil Co.,*
   23 Cal.4th 429 (2000) ...........................................................................10

*Local Joint Exec. Bd. Of Culi-nary/Bartender Trust Fund v. Las Vegas*
   *Sands, Inc.,*
   244 F.3d 1152 (9th Cir. 2001) .............................................................16

*Lozano v. AT&T Wireless Servs.,*
   504 F.3d 718 (9th Cir. 2007) ...............................................................15

*Meyer v. Sprint Spectrum L.P.,*
   45 Cal.4th 634 (2009) ...........................................................................24

*Stathakos v. Columbia Sportswear Co.,*
   2017 WL 1957063 (N.D. Cal. 2017) .....................................................24

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) .................................................................9

*Stearns v. Ticketmaster Corp.,*
   655 F.3d 1013 (9th Cir. 2011) ............................................. 17, 19, 20, 21

*Turcios v. Carma Labs., Inc.,*
   296 F.R.D. 638 (C.D. Cal. 2014) .........................................................10

*Vasquez v. Super. Ct.,*
   4 Cal.3d 800 (1971) ................................................................... 9, 10, 12

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 ......................................................... 5, 12, 13, 15

*Watkins Inc. v. McCormick & Co.,*
   215 F. Supp. 3d 51 (D.D.C. 2016) ........................................................19

*Williams v. Gerber Products Co.,*
   552 F.3d 934 (9th Cir. 2008) ................................................................17

*Yoko-yama v. Midland Nat'l Life Ins. Co.,*
   594 F.3d 1087 (9th Cir. 2010) ..............................................................21

*Yumul v. Smart Balance, Inc.,*
   733 F. Supp. 2d 1117 (C.D. Cal. 2010).................................................14

Statutes

15 U.S.C. 1454(c) ................................................................................................1

7A Fed. Prac. & Proc. Civ. § 1764 ....................................................................15

Cal. Bus. & Prof. Code § 12606.2 ............................................................. passim

Cal. Civ. Code § 1770(a) .....................................................................................19

Cal. Civ. Code §1770(a)(5) ..................................................................................21

Cal. Health & Safety Code § 110375 .......................................................... passim

Cal. Health & Safety Code § 110375(b) ...............................................................5

## Rules

Fed. R. Civ. P. 23 ..................................................................... ii, 9, 10, 23

Fed. R. Civ. P. 23 (a) ............................................................... 9, 10, 14, 15

Fed. R. Civ. P. 23(a)(1) .......................................................................10

Fed. R. Civ. P. 23(a)(3) ...................................................................10, 14

Fed. R. Civ. P. 23(b)(2) ....................................................... ii, 2, 5, 23, 24

Fed. R. Civ. P. 23(b)(3) .................................................................. passim

Fed. R. Civ. P. 23(g)(1) .......................................................................16

## I.   <u>INTRODUCTION</u>

This is a class action brought on behalf of California consumers of top-selling deodorant and antiperspirant products manufactured by Defendant Unilever United States, Inc. ("Defendant"). For more than a half-century, Congress has recognized the inherently deceptive nature of some packaging to consumers. *See* 15 U.S.C. 1454(c). The FDA prohibits nonfunctional slack-fill in food products, stating, "A container that does not allow the consumer to fully view its contents shall considered to be filled as to be misleading if it contains nonfunctional slack-fill." 21 C.F.R. § 100.100.  Taking direction from federal law, forty-nine states, including California, have also enacted laws establishing that packages containing food or cosmetics cannot be filled misleadingly. *See* Cal. Bus. & Prof. Code § 12606.2; Cal. Health & Safety Code § 110375 ("A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill. Slack fill is the difference between the actual capacity of a container and the volume of product contained therein.")

The products at issue in this case are deodorants and antiperspirants sold under the names Dove for Women, Dove Men + Care, Degree for Men, and Degree for Women in the "large size" pack at 2.6, 2.7 or 3 ounces per unit (hereinafter, "the Products"). Plaintiffs Nicole Krause-Pettai, Christy Botto, Kevin Bolden, and Errol Carreon (collectively, "Plaintiffs") contend that Defendant unlawfully packages the Products in opaque containers that obscure a significant under-filling of the product, giving consumers the false impression that the packages contain up to 25% more product than they actually receive. Despite fine print listing the weight, there is simply no way for a reasonable consumer, when examining the opaque container, to understand the volume of product they are receiving before making a purchase. These over-sized and under-filled containers result in much of the volume containing nonfunctional empty space, or "nonfunctional slack-fill," in violation of California and federal packaging laws, as well as California's consumer protection statutes.

1

Plfs' Memo. ISO Their Motion For Class Certification

Defendant Unilever contends that any slack-fill present in the Products is "functional" according to the exceptions listed under Cal. Health & Safety Code § 110375. For example, Unilever contends that the considerable empty space in Dove and Degree packs are "necessary based on the requirements and tolerances for the machines used to fill the products into their packaging" and to avoid "overflow and spillage." Declaration of Joel M. Gordon ("Gordon Dec."), ¶ 8, Ex. F at p. 8. Unilever's corporate representative, David Tropia, testified as much, claiming that "hot filling" the product into upside-down containers required additional space at the "bottom" of the pack (i.e. the top during the filling process) in order to avoid overflow and spillage. Id. at 92:11-95:20. However, Unilever has also acknowledged, via Mr. Tropia's testimony, that Unilever's Axe products are filled on the same manufacturing lines by the same machines and are filled with almost 25% more product by volume than Dove or Degree. Id. at 97:12-19. Since the machines could easily fill the containers by volume rather than by weight, there is no reason why certain products, such as Dove and Degree, should be under-filled by volume while other products, such as Axe, should fill most of their containers. Gordon Dec., ¶ 10, Ex. H at _ for comparison of the Products and Axe.

Plaintiffs and the proposed Class contend that this practice of marketing and selling the Products with a significant degree of nonfunctional slack-fill has been materially relied upon by consumers, and that the slack-fill present to a nearly equal proportion in nearly all of the Products is not functional and only serves to mislead under California law. The above can be shown with common evidence at trial. The relief sought, aside from monetary damages, is simple: translucent or transparent packaging, higher fill level of the Products, smaller containers relative to the volume of product available inside, and/or marking of fill-lines on the outside of the package. Plaintiff moves to certify this case under Rules 23(b)(2) and (b)(3), and for appointment of Plaintiffs as Class Representatives and Marlin & Saltzman, LLP as Class Counsel.

## II.     STATEMENT OF FACTS

The average consumer spends roughly twelve seconds to make an in-store purchasing decision, a decision which is heavily dependent on a product's package dimensions. Gordon Dec., ¶ 9, Ex. G at p. 5. In fact, most consumers do not bother to look at label information, including the net weight. Id. at pp. 7-8. Faced with a larger container and a smaller container, both with the same amount of product inside, consumers of deodorant are apt to choose the larger container because they perceive it is a better value. Id. at p. 4.

Although there are hundreds of sub-brands associated with Degree and Dove, the products are sold in only four different "large size" containers, which make up most of these sales[1]. Id. During the Class Period, the full-size non-premium Degree for Women and Dove for Women antiperspirants (2.6 ounce) were packaged in the "Meteor" container. Gordon Dec., ¶ 4, Ex. B, Responses to Interrogatories 14-16. During the Class period, the full-sized premium Degree for Men and premium Dove Men + Care products, both antiperspirants (2.7 ounce) and deodorants (3 ounce), were packaged in the "Sundae" container. Id., Responses to Interrogatories 23-25. During the Class Period, the full-sized baseline Degree for Men antiperspirants (2.7 ounce) and deodorants (3 ounce) were packaged in the "Syzygy" container. Id., Responses to Interrogatories 29-31. During the Class Period, premium Degree for Women and Dove for Women antiperspirants and deodorants, along with Dove Men + Care antiperspirants and deodorants (all 2.6 ounce), were packaged in the "Morpheus" container. Id., Responses to Interrogatories 35-37.

### A.     Parties

Plaintiff Nicole Krause Pettai resides in San Diego county. Third Amended Complaint ("TAC"), ¶ 11. On multiple occasions during the class period, she purchased

[1] Unilever also sells smaller-sized 1.7 oz containers and travel-sized .5 oz. containers, which make up a negligible portion of their bottom line. Since none of the Plaintiffs purchased products packaged in the small size containers, they are not at issue in the present Certification Motion.

Dove stick antiperspirant and deodorant products, relying on representations made by the packaging that the product extended most of the way down to the top of the product-delivery platform. Id. In late 2017, she bought a Dove product for the last time before learning that it contained nonfunctional slack-fill. Id. If not for the misrepresentations of the packaging and the under-filled volume, she would purchase one of the Products again. Id.

Plaintiff Christy Botto (formerly Stevens) resides in Sacramento county. Id., ¶ 12. On multiple occasions during the class period, she purchased Degree stick antiperspirant products, relying on representations made by the packaging that the product extended most of the way down to the top of the product-delivery platform. In August of 2017, she bought a Degree product for the last time before learning that it contained nonfunctional slack-fill. If not for the misrepresentations of the packaging and the under-filled volume, she would purchase one of the Products again. Id.

Plaintiff Kevin Bolden resides in San Luis Obispo county. Id., ¶ 13. On multiple occasions during the class period, he purchased Dove Men + Care antiperspirant products, relying on representations made by the packaging that the product extended most of the way down to the top of the product-delivery platform. Id. In March 2022, he bought a Dove product for the last time before learning that it contained nonfunctional slack-fill. Id. If not for the misrepresentations of the packaging and the under-filled volume, he would purchase one of the Products again. Id.

Plaintiff Errol Carreon resides in San Mateo county. Id., ¶ 14. On multiple occasions during the class period, he purchased Degree and Dove Men + Care antiperspirant and deodorant products, relying on representations made by the packaging that the product extended most of the way down to the top of the product-delivery platform. Id. In March 2022, he first learned that the Products contained non-functional slack-fill. Id. On that date, he stopped purchased the Dove product and bought a Degree product for the last time in August 2022. Id. If not for the misrepresentations of the packaging and the under-filled volume, he would purchase

one of the Products again. Id.

Unilever NV is an international company based in the Netherlands. Id., ¶ 16. Defendant Unilever United States, Inc. is a corporation headquartered in New Jersey and incorporated within the state of Delaware. Id., ¶ 18. Unilever places its products into the stream of commerce to be sold directly to consumers throughout the state of California by various marketing channels including Target, Walgreens, Wal-Mart, and CVS, where Plaintiffs purchased most of their Products. Id., ¶ 19.

### B.   Class Definition

Plaintiffs move for class certification under Rules 23(b)(2) and (b)(3) defined below ("the Class"): "All California consumers who purchased 'large size' Dove and Degree deodorant and/or antiperspirant packs during the Class Period."[2]

### C.   Plaintiffs' Claims

The TAC asserts three causes of action under California Business and Professions Code Section 17200, et seq., the Unfair Competition Law ("UCL"); Business and Professions Code Section 17500, et seq., the False Advertising Law ("FAL"); and Civil Code Section 1750, et seq., the Consumers Legal Remedies Act ("CLRA"). Plaintiff's claims arise out of Defendant's deceptive Product packaging and the presence of nonfunctional slack-fill contained therein. TAC ¶¶ 7, 35-39, 49-86. Plaintiff contends the following:

California and federal law prohibit cosmetics containers from being "made, formed, or filled as to be misleading." Cal. Health & Safety Code § 110375(a); TAC ¶ 36; Cal. Bus. & Prof. Code § 12606.2; 21 C.F.R. § 100.100. An opaque, or non-transparent, container "shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." TAC ¶ 36; Cal. Health & Safety Code § 110375(b); Cal. Bus.

---

[2] The "large size packs" referred to above are those described by Defendant in its Responses to Plaintiffs' Second Set of Interrogatories as (1) the "Meteor" Female Container (2.6 ounce), (2) the "Sundae" 87-cc Container (2.7/3 ounce), (3) the "Syzygy" 87 cc Container (2.7/3 ounce), and (4) the "Morpheus" Container (2.6 ounce). See Gordon Dec., ¶ 4, Ex. B, Responses to Special Interrogatories Nos. 14-16, 23-25, 33-35, and 36-38.

& Prof. Code § 12606.2; 21 C.F.R. § 100.100. "Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein." Id. Nonfunctional slack-fill is the empty space in a package that is filled substantially less for reasons other than six enumerated reasons permitted under these statutes. Id. Thus, proof that one unit of a Product contains nonfunctional slack-fill shall constitute proof as to all units of that Product.

**Count I (Violation of the CLRA).** Defendant's business practice of manufacturing and selling the Products in oversized, opaque packaging with substantial nonfunctional slack-fill violates the CLRA by, among other things, misrepresenting the approval of the Products as compliant with 21 C.F.R. Section 100.100 and California Business and Professions 110375 and 12606.2 and using deceptive representations in connection with the Products. TAC ¶¶ 49-71.

**Count II (Violation of the FAL).** Defendant's business practice of manufacturing and selling the Products in oversized, opaque packaging with substantial nonfunctional slack-fill violates the FAL as a misleading dissemination of an advertising device. TAC ¶¶ 72-77.

**Count III (Violation of the UCL).** Defendant's business practice of manufacturing and selling the Products in oversized, opaque packaging with substantial nonfunctional slack-fill violates the UCL as follows: First, in violation of the "unlawful" prong, Defendant's inclusion of substantial nonfunctional slack-fill in the Products' opaque packaging violates federal and California packaging laws. Second, in violation of the "unfair" prong, the financial injury caused by Defendant's unlawful packaging outweighs any benefits provided to consumers, and said injury is one that consumers could not reasonably avoid. Third, in violation of the "fraudulent" prong, Defendant's conduct is likely to deceive members of the public. TAC ¶¶ 78-86.

There is simply no excuse for the Products at issue to contain so much empty space inside of packaging that promises a greater volume of the product that consumers have paid for. The manufacturing process, which Defendant claims requires the filling

of containers with product in its liquid form prior to cooling, does not further require that containers be filled by weight rather than volume. *See* Gordon Dec., ¶8, Ex. F, 92:11-95:20 for Tropia testimony regarding manufacturing process for all Products at issue; *see* Gordon Dec., ¶ 10, Ex. H, pp. 9-10 for Dr. Singh's conclusion that the machinery should fill the containers by volume rather than net weight. Furthermore, the absence of nonfunctional slack-fill in products such as the Axe brand, which is manufactured and filled with same process (*See* Gordon Dec., ¶ 8, Ex. F at 93:2-24) the same machines (Id., 97:12-19), in similarly sized containers (Gordon Dec., ¶ 10, Ex. H, pp. 13-14), leads to the conclusion that Unilever made a concerted choice to deprive consumers of fully filled containers in order to save costs for Dove and Degree products.

With up to 25% of the container taken up by empty non-functional space, the cost per unit saved is likely millions of dollars annually, all taken from consumers who believed that they were receiving deodorant rather than empty space for the price. While the reasonable consumer might expect that some hidden parts of the container might not contain the product, such as the base of the container where the turning mechanism is housed, cross-sections of the Products reveal up to 25% of the containers are taken up with empty space. *See* Gordon Dec., ¶ 10, Ex. H, pp. 17-18, for photographs of all Dove Men + Care (Fig. 8), Degree for Women and Dove for Women (Figures 8 and 9). In comparison with Axe products, which are filled on the same manufacturing line, the amount of nonfunctional slack-fill is readily apparent.

### D.  Packaging At Issue

Unilever acknowledges that the Products at issue are packaged in containers that are completely opaque from at least the bottom of the cap to the top of the product-delivery platform. *See* Gordon Dec., ¶ 8, Ex. F at 201:19-208:1. Some containers, such as the "Meteor" container for 2.6-ounce Degree and Dove for Women Antiperspirant products, feature a translucent cap, with an opaque body. Id. at 203:25-207:4. Others, such as "Syzygy" and "Sundae" containers for Degree for Men and Dove Men + Care

2.7-ounce antiperspirants and 3.0 deodorants, are completely opaque. Id. Still others, such as "Morpheus" container for other Degree for Women and Dove for Women, feature a translucent cap, a translucent outer shell on the body, and an inner shell that is an opaque white or blue. Id. at 203:25-207:17. None of the deodorant or antiperspirant sticks are visible to the consumer viewing the containers from the outside and all consumers, and all Plaintiffs depended on the size of the containers to tell them the amount of produce available therein. *See* Plaintiffs' Declarations at ¶ 6.

### E.   Sales Of The Products During Class Period

Defendant has produced sales figures for all of the Dove and Degree products sold during the Class Period. Gordon Decl., ¶¶ 5-7, Exs. C-E. At an average retail per-unit sale of between $5 and $6, it would be safe to approximate that Defendant has sold tens of million units of the Products during the Class Period. Therefore, the Class is sufficiently numerous.

### F.   Procedural History

The original Complaint in this matter was filed on August 26, 2020 in this District. Dkt. 1. Plaintiffs amended the Complaint to note that Defendant responded to the notice requirement under the Consumer Legal Remedies Act ("CLRA"). Dkt. 11. Unilever filed a Motion to Dismiss, which the Court granted in part, allowing Plaintiffs leave to file a Second Amended Complaint, which they did on May 6, 2021. Dkt. 20. Unilever filed a second Motion to Dismiss, which the Court dismissed in its entirety on August 20, 2021. Dkt. 35. In ruling against Unilever, the Court confirmed that Plaintiffs had standing to bring claims based on products they did not purchase but that had a substantial similarity to those that they did purchase—i.e. they have standing to bring a case on behalf of everyone who purchased Dove and Degree products packaged in the same opaque containers with non-functional slack-fill, regardless of differences in scent, color, label design, etc. Id, pp. 4-5. The Court also concluded that Plaintiffs could demonstrate necessary future injury requiring injunctive relief. Id., pp. 2-4.

/ / /

### III.   **LEGAL STANDARD**

To be certified as a class action, Plaintiff must satisfy the requirements under Rule 23(a) and at least one of the Rule 23(b) prongs. *Hanon v. Dataprods. Corp*., 976 F.2d 497, 508-09 (9th Cir. 1992). Class certification presents a procedural issue and not a merits determination. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The Court may consider evidence which goes to the requirements of Rule 23 but should not weigh competing evidence. *Staton v. Boeing Co*., 327 F.3d 938, 954 (9th Cir. 2003). Consumer protection claims are ideal for class certification and any doubt as to the propriety of certification should be resolved in favor of certification. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997); *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913 (9th Cir. 1964); *Vasquez v. Super. Ct*., 4 Cal.3d 800, 808 (1971).

In crafting Rule 23, the U.S. Supreme Court explained that "the Advisory Committee had in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prods., Inc*, 521 U.S. at 617. Indeed, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Datta v. Asset Recovery Sols., LLC*, No. 15-CV-00188-LHK, 2016 WL 1070666, at *9 (N.D. Cal. Mar. 18, 2016); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123–24 (9th Cir. 2017) ("The court concluded that the 'risks, small recovery, and relatively high costs of litigation' make it unlikely that plaintiffs would individually pursue their claims. These considerations are at the heart of why the [Rules] allow class actions in cases where Rule 23's requirements are satisfied. This case vividly points to the need for class treatment. The individual damages of each merchant are too small to make litigation cost effective in a case against funded defenses and with a likely need for expert testimony. The district court also found that a class action was superior because litigation on a class-wide basis would promote greater efficiency in resolving the classes' claim."). Courts are to resolve any doubt whether to certify a class in favor of

certification due to California's strong policy in favor of the class action procedure. *Linder v. Thrifty Oil Co*., 23 Cal.4th 429, 434 (2000). Class actions are particularly favored and encouraged in the area of consumer law. *Vasquez*, 4 Cal.3d at 808.

Here, class certification will meet the Ninth Circuit's and Rule 23's objective of vindicating the rights of consumers who have been misled and financially harmed by large corporations like Defendant, but separately lack the necessary resources to pursue an individual action. In the instant resource-intensive, expert-driven case, each consumer's individual damages would not justify the time and expense of bringing separate actions.

## IV.   ARGUMENT

### A.   The Requirements of Rule 23(A) Are Satisfied

"[Rule] 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." Fed. R. Civ. P. 23; *Hanon,* 976 F.2d at 508.

#### 1.   There Is No Dispute That The Class Is Sufficiently Numerous

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable. Fed. R. Civ. P. 23(a)(1); *Harris*, 329 F.2d at 913-14. (Impracticability does not mean impossibility). There is no set numerical cutoff used to determine whether a class is sufficiently numerous. *Turcios v. Carma Labs., Inc*., 296 F.R.D. 638, 641 (C.D. Cal. 2014) (39 potential class members were sufficient).

As explained above, the likely number of consumers who bought the Products in California during the Class Period is in the tens of millions. Therefore, the Class is sufficiently numerous.

#### 2.   There Are Common Questions of Fact and Law

Rule 23(a)(3) requires typicality, which "focuses on the class representative's

claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d at 1116 (citation and internal quotation marks omitted). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.* To satisfy the requirement of commonality, plaintiffs need not show that a common question will be answered in their favor. See *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17-cv-2335, 2018 WL 6300479, at *5 (S.D. Cal. Nov. 29, 2018) (it "requires too much of the plaintiff by demanding a common contention that 'will be answered, on the merits in favor of the class' instead of simply showing there is a 'common contention capable of classwide resolution'" (quoting *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015))). Rather, they need only show that the common question is capable of generating a "common answer" even if that answer defeats their claim.

Here, the commonality element is satisfied because the claims pose key common questions: (1) whether the Products' opaque packaging is unlawful, unfair, fraudulent, or likely to deceive the reasonable consumer, where it contains less deodorant/antiperspirant product (and more nonfunctional empty space) than consumers expected; (2) whether the size of the Products' packaging is material to Plaintiffs and Class Members in deciding to purchase the Products; (3) whether the Products contain nonfunctional slack-fill in violation California and federal packaging laws; and (4) whether Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole.

As numerous courts have recognized, "a claim concerning alleged misrepresentations on packaging to which all consumers were exposed is sufficient to satisfy the commonality requirement because it raises the common question of whether the packaging would mislead a reasonable consumer." *Broomfield v. Craft Brew*

*Alliance, Inc*., No. 17-cv-01027, 2018 WL 4952519, at *5 (N.D. Cal. Sept. 25, 2018) (commonality satisfied by common question of whether representations on Kona Beer packaging would have deceived a reasonable consumer into believing beer was brewed in Hawaii). Because all class members purchased the same Products, were exposed to the same packaging, and received the same amount of deodorant/antiperspirant product (and slack-fill), there is "a common core of salient facts." *Hanlon*, *Hanlon v. Chrysler Corporation*, 150 F.3d 1011, 1019 (9th Cir. 1998). Further, the six exceptions used to determine when slack-fill is functional uniformly applies across all units of each respective Product. As shown by Plaintiffs' expert, the four containers in which the Products were packaged uniformly contain approximately an equal amount of nonfunctional slack-fill, so if Plaintiffs can prove this for one unit of the product, then, then that will be true of every "large size" container in which Degree and Dove products have been sold. Furthermore, if Plaintiffs prove that the empty space in the Products is nonfunctional, then the packaging is *misleading as a matter of law*. Cal. Health & Safety Code § 110375; Cal. Bus. & Prof. Code § 12606.2; 21 C.F.R. § 100.100. This will resolve "in one stroke" an issue that is "central to the validity" of each class member's claims, i.e., whether the Products' packaging violated California and federal packaging laws and, by extension, California's consumer protection laws. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551.

Common legal issues include such basic questions such as whether the misrepresentations are material as required by the CLRA. *Lewis v. Robinson Ford Sales, Inc*., 156 Cal. App. 4th 359, 368 (2007); *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009) ("[A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material" only to named plaintiffs, and not to all class members. Thus, only a named plaintiff is required to show that "the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct."); *Vasquez,* 4 Cal. 3d at 814 ("[I]f the trial court finds material misrepresentations were

made to the class members, at least an inference of reliance would arise as to the entire class.").

Here, Plaintiffs have established that Defendant's misrepresentation as to the amount of deodorant/antiperspirant contained in the packaging were immediate causes of their purchase decision. Plaintiffs' Declarations at ¶ 6. Each Plaintiff primarily valued the Products because the sizes of the containers indicated that the consumers were getting good deals. Id. Because of the opaque packaging, none of the Plaintiffs could verify the volume of deodorant/antiperspirant contained inside the packaging and all assumed that they were getting an amount of the product roughly equivalent to the what was promised by the size of the container. Id. at ¶ 2. Plaintiffs' expert, Dr. Morgeson, confirms that consumers spend very little time making in-store decisions and rely almost completely on package size rather than labeling information. Gordon Dec., ¶ 9, Ex. G at p. 4. Furthermore, as Dr. Morgeson opines, consumers are "unlikely to have been aware they were receiving less product than the package size indicated and that they might have reasonably anticipated prior to purchasing." Id. Consumers would not expect goods they purchase to contain nonfunctional slack-fill, which the California Legislature deems *misleading as a matter of law*. *Id*.; Cal. Health & Safety Code § 110375; Cal. Bus. & Prof. Code § 12606.2; 21 C.F.R. § 100.100. This proves consumers are deceived by the size of the Products' packaging because they receive far less deodorant/antiperspirant then they expect to receive.

The designs of the packages at issue have not changed during the Class Period. *See* Gordon Dec., ¶ 4, Ex. B. Thus, the material misrepresentation (and deception) was consistent across California throughout the period of time, and the claims of all class members "stem from the same source." *Hanlon*, 150 F.3d at 1019-20. As a result, certifying this case as a class action "will generate common *answers* apt to drive the resolution of the litigation" and address questions common to Plaintiff and the Class. *Dukes*, 131 S. Ct. at 2551. For instance, shrinking the package relative to the amount of deodorant/antiperspirant produce inside, or making the current packaging more

transparent, or adding a fill line to indicate on the package itself how much deodorant/antiperspirant is inside, would eliminate consumer deception and, in turn, resolve questions common to the Class.

Claims under the UCL, FAL, and CLRA are ideal for class certification because they will not require the court to investigate "class members' individual interaction with the product." *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 535 (C.D. Cal. 2011); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010) ("California courts have held that reasonable reliance is not an element of claims under the UCL, FAL, and CLRA."). For this reason, district courts in California routinely certify consumer class actions arising from alleged violations of the UCL, FAL, and CLRA.

### 3.    Plaintiffs' Claims Are Typical of the Class

The typicality requirement looks to whether "the claims of the class representatives [are] typical of those of the class, and [is] 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive' with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Typicality is established where the class was injured through an alleged common practice. *Id*. Plaintiff need only show that defendant made a misrepresentation or engaged in an unfair practice that was typical across the class, and that plaintiff and class members were injured.

The typicality requirement is "liberally construed." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 260 (D.D.C. 2002). "[T]o destroy typicality, a distinction must differentiate the 'claims or defenses' of the representatives from those of the class." *J.D.*, 925 F.3d at 1322 (quoting Fed. R. Civ. P. 23(a)(3)). "As a result, typicality is ordinarily met 'if the claims or defenses of the representatives and the members of the

class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.' " Id. (quoting 7A Fed. Prac. & Proc. Civ. § 1764); see also *Wal-Mart*, 564 U.S. at 348-49, 131 S.Ct. 2541 (a class representative must "possess the same interest and suffer the same injury as the [putative] class members"); *In re Rail Freight Fuel Surcharge Antitrust Litig*., 292 F. Supp. 3d 14, 94 (D.D.C. 2017) (typicality "is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability").

Typicality is satisfied here, as Plaintiffs' and Class members' claims are similarly based on Defendant's use of oversized, opaque packs containing substantial nonfunctional slack-fill. As such, Plaintiffs' and all Class members' are "reasonably co-extensive" because the harm they allegedly suffered stems from Defendant's common practice of packaging the Products. Because the issues in this case arise from the same course of conduct that gives rise to the Class' claims and the claims are based on the same legal theory, Plaintiffs' claims are typical. *Lozano v. AT&T Wireless Servs*., 504 F.3d 718 (9th Cir. 2007).

### 4. Plaintiffs and Proposed Class Counsel Are Adequate Representatives

The final requirement under Rule 23 (a) is that "the representative parties will fairly and adequately protect the interests of the class." In the Ninth Circuit, courts use a two-prong test to determine if the adequacy requirement is met: 1) whether plaintiffs and their counsel "have any conflicts of interest with other class members," and 2) whether plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Hanlon v. Chrysler Corporation*, 150 F.3d at 1020. Both of these requirements are satisfied here.

Plaintiffs' interests are co-extensive with the interests of absent Class Members. All Plaintiffs have been active in the litigation thus far, and each Plaintiff is familiar with the claims in this matter. They have reviewed the amended complaints, discovery

responses, and sat for deposition. *See* Plfs. Decls., ¶¶ 3-5. None of the Plaintiffs have an ulterior interest in conflict with the Class, and all have discussed the necessity of bringing such an action in this manner in order to recover both monetary damages and implement practice changes that will prevent Defendant from misleading consumers with slack-fill in the Products. Id., ¶ 3.

Proposed Class Counsel Marlin & Saltzman is unquestionably qualified to represent the Class under Rule 23 (g)(1). *See* Declaration of Stanley D. Saltzman. The firm has been retained by Plaintiffs, and are willing and able to represent the interests of the Class. Id., ¶ 3. They are the attorneys who have appeared at all of the depositions, have retained the expert witnesses, and have conducted all the extensive motion practice up to this point. Id. They are experienced class action attorneys with expertise in class action litigation, including consumer claims like those in this litigation. Id., ¶ 14. They have the resources necessary to efficiently prosecute this case on behalf of the proposed class. Id., ¶ 14.

### B. The Requirements of Rule 23 (B)(3) Are Satisfied

Rule 23**Error! Bookmark not defined.**(b)(3) certification is appropriate here because: (i) questions of law or fact common to the members of the class predominate over individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162-63 (9th Cir. 2001).

#### 1. Common Questions Are Well-Established and Predominate

"Predominance is a test readily met in certain cases alleging consumer [fraud]." Amchem, 521 U.S. at 625. The requirement demands only predominance of common questions, not exclusivity or unanimity of them. Rule 23**Error! Bookmark not defined.**(b)(3); *Gartin v. S&M NuTec, LLC*, 245 F.R.D. 429, 435 (C.D. Cal. 2007) ("When one or more of the central issues in the action are common to the class and can be said to predominate, [a class action] will be considered proper . . . even though other

---

matters will have to be tried separately"). Where, as here, "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 122.

Indeed, liability pursuant to California's UCL, FAL, and CLRA all require a determination of whether the reasonable consumer is likely to be deceived—a common issue that does not require individualized inquiry. *See In re: Lenovo Adware Litig*., No. 15-MD-02624-RMW, 2016 WL 6277245, at *20 (N.D. Cal. Oct. 27, 2016); *Stearns v. Ticketmaster Corp*., 655 F.3d 1013, 1022 (9th Cir. 2011) (under the CLRA, "[c]ausation, on a classwide basis, may be established by materiality, [i]f the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class"); *Id*. (a misrepresentation is material if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question . . . ."). Accordingly, California district courts routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL.

Here, Plaintiffs' claims under the CLRA, FAL, and UCL are governed by the "reasonable consumer" test. *Williams v. Gerber Products Co*., 552 F.3d 934 (9th Cir. 2008). The California Supreme Court has recognized "that these laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" Id. at 938. Thus, the common question that predominates the analysis of all of these claims is whether a reasonable consumer would be deceived by Defendant's common and uniform slack-fill deception.

Importantly, in answering this common question, Plaintiffs do not have the burden to show the actual understanding of all consumers, or of any particular percentage of consumers, or that there was a uniform, class-wide understanding. Rather, to prevail at trial, Plaintiffs must simply establish "that a significant portion of

the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 508 (2003)).

Here, Plaintiffs can show through objective, common evidence that the non-functional slack-fill in Dove and Degree products is deceptive (because up to 25% of each large size pack contains empty space not justified by any manufacturing concerns); were material (because the average reasonable consumer judges the volume of product received by examining the external packaging); were uniformly distributed to the class (these containers are uniform across retail venues in California); that the Class viewed the deception (all purchases were made after visual inspection of the containers); and that such conduct by Defendants was likely to deceive the Class. Thus, these common questions predominate the class.

> ### a.   Common Legal and Factual Issues Predominate Plaintiff's UCL and FAL Claims.

Common issues of fact and law predominate as to Plaintiff's claims under the UCL and FAL. *In re Tobacco II*, 46 Cal.4th 298, 312 n.8 (2009) ("A violation of the UCL's fraud prong is also a violation of the false advertising law."). When plaintiff and class members are exposed to a common misrepresentation, common issues predominate. See *In re Ferrero Litig*., 278 F.R.D. 552, 560 (S.D. Cal. 2011) (predominance satisfied whether class members had "common contention" that Defendant "made a material misrepresentation regarding the nutritious benefits of Nutella that violated the UCL, FAL, and the CLRA" and "any injury suffered by a class member stems from Defendant's common advertising campaign of Nutella"). Claims under the UCL are particularly appropriate for class certification because the *UCL focuses on the defendant's conduct* and not the plaintiff's damages (and individualized proof of deception, reliance and injury are not required). *Tobacco II,* 46 Cal.4th at 324; see also*, In re Abbott Laboratories Norvir Antitrust Litig*., No. C 04-1511 CW, 2007 WL 1689899, at *10 (N.D. Cal. June 11, 2007) ("[C]laims brought

under the [UCL] are commonly certified for class treatment."). To this end, whether conduct is "misleading" under the UCL and FAL is determined by a "reasonable consumer" standard. *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 509-10 (2003).

Each Class member who purchased the Products was exposed to the same misleading Product packaging and nonfunctional slack-fill. Accordingly, the determination of Defendant's liability under both statutes presents a singular legal issue that is common to the entire Class: whether "members of the public are likely to be deceived" by the Products' packaging and nonfunctional slack-fill therein. *See Watkins Inc. v. McCormick & Co.*, 215 F. Supp. 3d 51, 61 (D.D.C. 2016) ("[N]onfunctional slack-fill is considered deceptive as a matter of law, so there is nothing implausible about allegations of actual, widespread deception among [Defendant's] customers.") Through common evidence, Plaintiff will prove that the size of the Products' packaging is misleading to the reasonable consumer, and the slack-fill therein is nonfunctional.

### b.     Common Legal and Factual Issues Predominate Plaintiff's CLRA Claim

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices[.]" Cal. Civ. Code § 1770(a). To bring a CLRA claim, the plaintiff must show that: (1) the defendant's conduct was deceptive; and (2) that the deception caused harm. *Stearns,* 655 F.3d at 1022. In the class context, a CLRA claim "requires each class member to have an actual injury caused by the unlawful practice." *Id*. Plaintiff's CLRA claim will be proven with common evidence.

First, as described *supra*, common evidence shows Defendant's conduct is deceptive because of the Products' uniformly misleading packaging and the nonfunctional slack-fill therein. See *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) ("[C]ourts have taken the common-sense approach that the class is united by a common interest in determining whether defendant's course of conduct is in its broad

outlines actionable, which is not defeated by slight differences in class members' positions"). Plaintiffs will establish that the Products' packaging is deceptive and contains nonfunctional slack-fill (and, thus, the Products do not have "characteristics, uses, benefits, or qualities" as advertised). Importantly, in answering this common question, Plaintiffs do not have the burden to show the actual understanding of all consumers, or of any particular percentage of consumers, or that there was a uniform, class-wide understanding. Rather, to prevail at trial, Plaintiffs must simply establish "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).

Second, the CLRA's causation element also favors class certification. The CLRA requires that each class member suffer an actual injury but "[c]ausation, on a classwide basis, may be established by materiality. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises to the class." *Stearns,* 655 F.3d at 1022; *In re Tobacco II*, 46 Cal.4th at 328 ("[A] plaintiff ... is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where . . . those misrepresentations and false statements were part of an extensive and long-term advertising campaign.") Whether a misrepresentation is material is a fact-intensive inquiry that asks whether "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 157 (2010). Thus, at certification, Plaintiff need only present evidence that Defendant made uniform, material misrepresentations to the class as a whole. *Id*.

In purchasing the Products, each Class member was necessarily exposed to Defendant's deceptive oversized Product packaging which contained nonfunctional slack-fill. Thus, because each Class member was exposed to the same material

misrepresentations, a presumption of reliance is appropriate, and causation can be determined on the basis of common proof. *Stearns*, 655 F.3d at 1022.

### c. Monetary Relief Can Be Calculated on a Class-Wide Basis.

The "predominance" requirement is satisfied when plaintiff demonstrates a classwide method of awarding relief that is consistent with the plaintiff's theory of liability. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-35 (2013). "[I]n this circuit . . . damage calculations alone cannot defeat class certification." *Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013) (quoting *Yoko-yama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). The presence of individualized damages does not defeat Rule 23 (b)(3) certification where damages from a uniform practice "could feasibly and efficiently be calculated once the common liability questions are adjudicated." *Id*. at 514. "At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time." *Chavez v. Blue Sky Natural Beverage Co*., 268 F.R.D. 365, 379 (N.D. Cal. 2010); *In re Cathode Ray Tube Antitrust Litig*., No. C-07-5944-SC, 2013 WL 5391159 at *5 (N.D. Cal. Sept. 24, 2013).

The CLRA provides remedies to consumers in the form of actual damages, punitive damages, and attorney fees, and costs. Cal. Civ. Code §1770(a) (5). Under the UCL, restitution is an available remedy in a class action. *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal.4th 1134, 1145 (2003). The proper measure of restitution is the difference between what the plaintiff paid and the value received. *Cortez v. Purolator*, 23 Cal.4th 163, 174 (2000). In *Comcast*, the Supreme Court held that in order to prove predominance plaintiffs have to "establish[ ] that damages are capable of measurement on a classwide basis." 569 U.S. at 35, 133 S.Ct. 1426. "Calculations need not be exact, but ... any model supporting a plaintiff's damages case must be consistent with its liability case." Id. The Court explained that it was imposing this burden on plaintiffs because otherwise "[q]uestions of individual damage calculations will inevitably

overwhelm questions common to the class." Id.

Plaintiffs' theory of liability is straightforward – consumers were deceived into paying for a "full" container of deodorant/antiperspirant when in fact they received a container with nonfunctional slack-fill. Plaintiff and the Class are pursuing remedies of injunctive relief, restitutionary damages, and attorneys' fees and costs. Further, because Defendant knowingly uses oversized, unlawfully slack-filled Product packaging when it has the ability to include more deodorant/antiperspirant product, shrink the box, or add features to eliminate consumer deception, an award of punitive damages may be warranted.

In order to calculate class-wide damages here, there are two questions that need be answered: (1) have consumers been deceived by the Products, and if yes, (2) how does one quantify the financial harm? Here, Plaintiffs have been able to show that a reasonable consumer purchasing the Products would be deceived by the opaque packaging into thinking that the containers at issue were filled with more product than they actually are. Furthermore, Plaintiffs have shown, through their own testimony and the expert opinion of Dr. Morgeson, that consumers primarily rely on the packaging size while making in-store purchases and that the amount of product received is a fundamental factor in choosing between one product and another. Finally, the expert of opinion of Dr. Singh confirms that there is a consistent and ascertainable amount of nonfunctional slack-fill in every container, from 20% to 25%. Unilever deceives the Degree and Dove consumer into believing that the product fills the container from the bottom of the cap to the top of the delivery platform, and consumers should be reimbursed an amount of their purchase equivalent to the percentage of nonfunctional slack-fill, which is uniform across all four containers and thus across the entire Class.

## 2.    A Class Action Is Superior to Other Methods of Adjudication.

"Rule 23 (b)(3) requires that a class action be 'superior to other available methods for fairly and efficiently adjudicating the controversy,' and it specifically mandates that courts consider 'the likely difficulties in managing a class action.'"

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127-28 (9th Cir. 2017).

A class action is clearly superior to individual proceedings here. The relatively small amount of individual damages are not enough to incentivize individual Plaintiffs given the high costs of litigation, especially considering Defendants' willingness to litigate the case. *Just Film*, 847 F.3d at 1123. The class is well-defined and includes anyone who purchased one of several top-selling brands of deodorants. However, the Ninth Circuit, in *Briseno*, declined to adopt a requirement that plaintiffs show an administratively feasible way to identify class members prior to certification, and that potential administrative burdens, such as cost, should not be dispositive when balanced against the benefits of class adjudication. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d at 1128. *See also Clay v. CytoSport, Inc.*, No. 3:15-CV-00165-L-AGS, 2018 WL 4283032, at *3 (S.D. Cal. Sept. 7, 2018) (quoting *Briseno*: "'[N]either Rule 23 nor the Due Process Clause requires actual notice to each individual class member,' but allow for 'notice by publication ..., or even at an appropriate physical location to the members who cannot 'be identified through reasonable effort'''); *In re Outlaw Lab'ys, LP Litig.*, No. 18CV840 GPC (BGS), 2020 WL 1083403, at *5 (S.D. Cal. Mar. 5, 2020) ("courts should not refuse to certify a class merely on the basis of manageability concerns").

Accordingly, the Court should certify the class.

## C.  The Requirements of Rule 23Error! Bookmark not defined.(B)(2) Are Satisfied

In the Ninth Circuit, a class may be certified under both Rule 23 (b)(2) and (b)(3). *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) ("Ninth Circuit precedent indicates that the court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class."). Certification under Rule 23(b)(2) is appropriate where a defendant has acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

Here, there is no dispute that the final injunctive relief sought by plaintiffs –

namely, practice changes that would demonstrate to the consumer the amount of product actually available inside the containers at issue– would apply generally to the entire class. *See Stathakos v. Columbia Sportswear Co.*, 2017 WL 1957063, at *16 (N.D. Cal. May 11, 2017). Indeed, this case is particularly appropriate for certification under Rule 23 (b)(2) because it seeks relief that can be satisfied with indivisible equitable relief that benefits all class member at once. *See Brazil v. Dole Packaged Foods, LLC*, 2014 WL 2466559, at *10 (N.D. Cal. May 30, 2014).

Finally, Plaintiffs have standing to seek injunctive relief. In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), the Ninth Circuit held that a previously deceived consumer "may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm" because "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." Id. at 969. Here, each of the named Plaintiffs would consider purchasing Dove and Degree products again in the future if Defendant was required to change their business practices and ensure that their marketing and advertising practices were not deceptive, misleading, or unlawful. See ¶ 7 of Plfs. Decls. Thus, all Plaintiffs have standing to seek injunctive relief.

As the Ninth Circuit explained in *Davidson*, denying Plaintiffs' request for injunctive relief in these circumstances undermines the objects of California's consumer protection laws. 889 F.3d at 970. This is because "the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction[,]" *In re Tobacco II Cases*, 46 Cal.4th at 319, and "[t]he CLRA, in its injunctive relief provisions, allows plaintiffs to enjoin a corporation's deceptive or unlawful business practices throughout the state on behalf of the general public." *Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634, 645 (2009).

Accordingly, the Court should certify the class.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, the Court should certify the class under Rule 23**Error! Bookmark not defined.**(b)(2) and (b)(3), appoint Plaintiffs as Class Representatives, and appoint Marlin & Saltzman, LLP. as Lead Class Counsel.

Respectfully submitted,

Dated: September 30, 2022                    **MARLIN & SALTZMAN, LLP**

By: _____

       Stanley D. Saltzman, Esq.
       Joel M. Gordon, Esq.
Counsel for Plaintiffs and the Proposed Class